### FORD HOUSE ET AL. v. CITY OF DALLAS.

#### No. 1217.  Decided June 8, 1903.

**City—Bond Tax—Suit Against Collector.**

A city can not maintain an action against its tax collector, nor sureties on his bond to the city, to recover taxes collected by him upon assessment to meet the interest and sinking fund of municipal bonds. In making such collections he performs a duty to the State, makes payment to the State Treasurer, is required to give bond to the State, and has no right to pay to the city. (Pp. 596, 597.)

Question certified from the Court of Civil Appeals for the Fifth District, on error from Dallas County.

*George H. Plowman* and *Etheridge & Baker,* for plaintiffs in error.—The tax collector of the city of Dallas was under no obligation to pay to the city of Dallas any portion of the railroad subsidy tax described in plaintiff's petition, and for a breach of any obligation resting on him to pay said taxes to the State Treasurer he was suable only by or in the name of the State. Rev. Stats., arts, 5233-5238; Acts 25th Leg., chap. 6, sec. 36, p. 22; State v. Felton, 59 Miss., 402; State v. Mays, 54 Miss., 417; Whitfield v. Woolridge, 23 Miss., 183; People v. Stacy, 74 Cal., 373; Shelby Co. v. Simmonds, 33 Iowa, 345; Hunter v. Mercer County, 10 Ohio St., 516; Board of Education v. Kersinger, 2 Ohio Dec., 344; Albertson v. State, 9 Neb., 429; People v. Love, 25 Cal., 520; Mower County v. Smith, 22 Minn., 97; Valley County v. Robinson, 32 Neb., 254; Northampton v. Elwell, 70 Mass., 81; McRea v. McWilliams, 58 Texas, 329; Aulanier v. The Governor, 1 Texas, 666; Warren v. State, 21 Texas, 510; People v. Comrs. of Highways, 6 Law. Rep. Ann., 161; State v. Mayor of Jersey City, 26 Law. Rep. Ann., 281; Black on Int. Laws, secs. 69 et seq.; Sutherland on Stat. Const., sec. 462.

*W. T. Henry* and *Jas. J. Collins,* for defendant in error.—The city of Dallas had an absolute right to maintain an action for the recovery of a portion of its taxes illegally withheld and appropriated by its tax collector. No public officer can withdraw from the State treasury or impede in its course to the treasury any money, without a law authorizing him to do so, and clearly fixing the amount. A person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary, and he is presumed to know the city ordinances prescribing his duties and fixing his salary, and his acceptance of the amount so fixed will estop him from claiming more. State v. Moore, 57 Texas, 320; County of Wharton v. Ahldag, 84 Texas, 15; McInerny v. City of Galveston, 58 Texas, 337; State v. Johnson, 29 S. W. Rep., 963; 1 Dillon on Mun. Corp., 4 ed., secs. 230-234, pp. 313-315, and notes.

BROWN, ASSOCIATE JUSTICE.—Certified questions from the Court of Civil Appeals, Fifth Supreme Judicial District:

"Ford House was tax collector of the city of Dallas and as such officer collected certain taxes levied to pay the interest and principal of certain railway subsidy bonds issued by the city in 1874. He was elected and qualified in 1898 and during his two years term of office collected on said taxes the sum of $23,356.16. He paid over the sum so collected, less 1½ per cent thereof retained by him as commissions, to the State Treasurer, as required by chapter 6, title 104, of the Revised Statutes. The city brought this suit against him and the sureties on his official bond to recover the amount so retained. The suit was on the general bond given by him to the city which was conditioned, in accordance with the charter and ordinances of the city, that he should "faithfully perform and discharge all the duties required of him by law, the city charter and the ordinances of the city of Dallas as city collector aforesaid." It was part of his duties as collector to collect the said taxes and pay over the same to the State Treasurer. At the time the said chapter 6, title 104, was enacted the offices of assessor and collector were combined and the incumbent was entitled to receive 2 per cent of the amount of said taxes for assessing the same and 3 per cent thereof for collecting the same. In 1888 the offices were severed and it was provided by ordinance that both the assessor and the collector should receive salaries instead of commissions. It was further provided that "no officer shall receive any costs or perquisites or other compensation than is allowed herein (i. e., in the ordinance fixing the compensation of the officers of the city) provided for." The former ordinances fixing the compensation of the officers of the city were expressly repealed. Since that time all the officers of the city, including the collector, have been allowed and paid fixed salaries as compensation for their services. At the time House was elected and qualified and at the time he made the collections aforesaid the laws of the city provided that the collector should receive for his services a sum not to exceed $1500 per annum. There was not then in force any law allowing him a commission for any services rendered by him, unless said chapter 6, title 104, should be construed as doing so. The city was authorized by law to fix the compensation of its officers. House was paid the salary allowed by the charter and ordinances in addition to the sum retained by him as commissions for collecting said taxes. Until the year 1897, the collector of the city always received as compensation for collecting said taxes, besides his salary, the sum of 3 per cent of the sum so collected, and the allowance of such commissions was, until 1897, approved by the city officials and by the State Treasurer. Since 1897, the right of the collector to such commissions has been in dispute. It does not appear whether the collector ever executed the special bond required by said chapter 6, title 104, of the Statutes. The plaintiff did not allege or show that the State or any officer thereof was asked to bring or join in bringing this suit, which is a straight suit by the city for its own use and benefit.

"Question 1. Is the city entitled to maintain this suit in its own

name for its own use and benefit, or should the suit have been brought in the name or for the benefit of the State?

"Question 2. Was House entitled to receive any amount, in addition to his salary, as compensation for his services in collecting the said taxes, and if so, what amount?

"Question 3. Is the construction placed by the officials of the city and by the State Treasurer, from 1879 to 1897, upon the law respecting the right of the collector to commissions for collecting the said taxes conclusive upon the city and upon the courts in this litigation?

"Question 4. If House is liable to the city herein, are the sureties on the bond in suit also liable? In other words, is the liability of the collector to the city covered by the bond sued on, or is a suit on the special bond provided for by chapter 6, title 104, the only recourse of the city?"

Answer to first question: The city of Dallas has no right to maintain this action, neither against Ford House, personally, nor against him and his sureties upon his bond.

The bonds, for the payment of which this tax was levied, were issued under a law of the Legislature of the State of Texas, approved April 12, 1871, entitled, "An act to authorize counties, cities and towns to aid in the construction of railroads and other works of internal improvements." Gen. Laws, 12th Leg., 29. By the provisions of that law a tax was required to be levied sufficient to pay the interest and not less than 2 per cent of the sinking fund of the bonds, which was required to be collected by the officer who should collect State taxes. Such officer was required to give a bond payable to the State of Texas in double the estimated amount of the taxes. In 1876 the Legislature passed an act regulating the collection and disbursement of the taxes provided for by the former law; the provisions of the latter act pertinent to the issues involved in this case are embodied in the following articles of the Revised Statutes of the State of Texas:

"Art. 5234. All such taxes shall be assessed and collected by the same officers whose duty it is to assess and collect the other municipal taxes, who shall receive the same rates of commission allowed for assessing and collecting the ad valorem tax of such city. * * *."

"Art. 5235. The officer whose duty it is to collect the aforesaid taxes shall give bond, with two or more sufficient sureties, to be approved by the mayor and board of aldermen of such city, in a sum fifty per cent greater than the estimated annual amount of said taxes, which bond shall be payable to the State, and shall be conditioned for the faithful assessing, collecting and paying over of said tax into the State treasury, as provided by law. * * *."

"Art. 5237. The collector of taxes levied under the provisions of this chapter shall pay over to the State Treasurer, at the beginning of each and every month, all moneys or coupons he may have collected during the preceding month, deducting his legal commissions on the amount so paid, and shall make a report of his collections to the mayor and city council at its first regular meeting in each month."

In the case of Morrill v. Smith County, 89 Texas, 555, it was held that, when the taxes levied for such purposes are collected and paid into the State treasury, the money becomes the property of the bondholders for whose benefit it was levied and collected, and that the officers of the State charged with the administration of the fund hold it as trustees for the bondholders.

From the provisions of the statute above quoted and the decision of the court cited, it is manifest that the city of Dallas can not maintain this action, because the city is not entitled to receive the taxes when collected, nor is the bond upon which this suit is based given to secure the collection of this fund; it is not payable nor "conditioned" as required by article 5235. It is true that the city has an interest in seeing that the duty is performed by the officers designated by law, because the fund is to go to the discharge of its indebtedness; and there might be a state of facts under which the city could compel the payment to be made to the State Treasurer; but until the debt has been discharged, the city has no right to the possession of any part of the fund. The disposition of a possible surplus is not provided for in case of cities. The city collector is designated by the law to make collection, but in doing so he performs a duty to the State and not to the city, therefore his failure to pay over the money to the city is neither a breach of his official duty to the city nor of his bond, because the law does not authorize him to make payment to the city, but enjoins upon him that he shall monthly make payment to the State Treasurer of all such moneys collected by him. Jernigan v. Finley, 90 Texas, 212. Upon what ground, then, can the city maintain an action against one who has violated no obligation due to it?

If the city may recover by suit against House for a failure to pay over the taxes, then House might pay the taxes to it without suit. If House had paid the taxes collected by him to the city and this suit were prosecuted by the State of Texas upon his bond to the State, his payment to the city treasurer would be no defense to such action, and if the judgment rendered in this case were permitted to stand, and the State should sue Ford House and his sureties upon his bond, this judgment would be no bar to a recovery against them upon that bond. It seems to us conclusive that the city can not maintain this suit, either against Ford House individually or against him and his sureties upon this bond.

There being no right of action in the city, the other questions proponded become wholly immaterial, and will not be answered.