## HOUSTON NAT. EXCHANGE BANK et al. v. SCHOOL DIST. NO. 25, HARRIS COUNTY. (No. 7235.)

(Court of Civil Appeals of Texas. Galveston. April 3, 1916. )

1. STATUTES ⬥181(1)—CONSTRUCTION.
  The controlling consideration in construing a statute is the ascertainment of the intention of the Legislature, which, when ascertained, must be given effect, when not inconsistent with the organic law of the state.
  [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 259; Dec. Dig. ⬥181(1).]

2. STATUTES ⬥225—CONSTRUCTION — LEGISLATIVE INTENT.
  To gather the legislative intention in enacting a particular statute, the courts are not confined exclusively to a consideration of it, but may look to other legislation in pari materia.
  [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 302, 303; Dec. Dig. ⬥225.]

3. SCHOOLS AND SCHOOL DISTRICTS ⬥18 — CONTROL OF FUNDS BY COUNTY AUDITOR—STATUTE—"FUNDS FOR THE USE OF, OR BELONGING TO, THE COUNTY."
  Under Rev. St., art. 1476, providing that it shall be the duty of the auditor to have a general oversight of all the books and records of all the officers of the county, district, or state who are authorized or required by law to receive or collect any money, funds, fees, or any other property for the use of or belonging to the county, a county auditor has no supervision of the funds of a common school district of the county, a supervision which is given school officers, such as trustees, superintendents, etc., named in the general statute governing the public free schools of the state; funds of a school district not being "funds for the use or belonging to the county."
  [Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 25–33; Dec. Dig. ⬥18.]

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by Ed. F. Pickering and others, composing the Board of School Trustees of Common School District No. 25 of Harris County, against the Houston National Exchange Bank and others. From a judgment for plaintiffs, the named defendant and another appeal. Affirmed.

Sewall Myer and Fisher, Campbell & Amerman, all of Houston, for appellant H. L. Washburn. Otto Taub, of Houston, for appellant Houston Nat. Exchange Bank. Jno. C. Williams, of Houston, for appellee.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

LANE, J. Ed. F. Pickering, J. W. Culpepper, and James Foster, composing the board of school trustees of common school district No. 25, Harris county, Tex., hereinafter called "school district," brought this suit against the Houston National Exchange Bank, hereinafter called "bank," Harry L. Washburn, auditor of Harris county, and others whose names are unnecessary for the purposes of this opinion. The real purpose of the suit was: First, to restrain H. L. Washburn, as county auditor, from in any manner interfering with the affairs of said school district No. 25, and from further claiming and asserting any authority to act as auditor of said school district; second, to restrain said bank from paying warrants audited and signed by said Washburn as auditor; and, third, to compel said bank, as depositary of the funds of said school district, to pay all warrants legally drawn against the funds of said school district, without requiring same to be approved or audited by said county auditor, H. L. Washburn.

It is provided by article 1467 of the Revised Civil Statutes, known as the "Auditor's Act," that:

"It shall be the duty of the auditor to have a general oversight of all the books and records of all the officers of the county, district or state, who are now, or who may hereafter be, authorized or required by law to receive or collect any money, funds, fees or other property for the use of or belonging to the county."

It is conceded by all parties to the suit that the only question presented for decision is: Are the funds of said school district, "funds for the use of, or belonging to, the county," as that term is used in the act of the Legislature creating and defining the duties of county auditors, as above set out?

The trial court determined the issue presented in favor of the plaintiff and granted the relief prayed for, and from the judgment rendered H. L. Washburn, auditor, and said depositary, bank, have appealed.

[1-3] As the only question to be decided is, What did the Legislature mean by the use of the words, "money, funds, fees or other property for the use of, or belonging to the county," found in that section of the auditor's act above quoted? it becomes necessary to examine not only the several sections of said act, but also the law constituting the whole machinery of the law governing the public school affairs of this state so as to reach an intelligent conclusion. It would be an unprofitable waste of time to enter into a lengthy discussion as to whether school funds are county funds or state funds. The important inquiry is: What money, funds, fees, and other property the Legislature intended to place under the oversight of the county auditor? The controlling inquiry is: What was the intention of the lawmaking power? To ascertain the intention of the lawmaking power is the end and aim of all rules of statutory construction, and, when ascertained, to give to it effect, when not inconsistent with the or-

ganic law of this state, is the duty of all courts. To gather that intention, the courts are not confined exclusively to the consideration of the immediate statute in question, but may look to other legislation in pari materia. If we do so in this case, we find that the same Legislature that passed the auditor's act, approved April 22, 1905 (Acts 29th Leg. c. 161), had just seven days prior thereto passed a general law covering in every detail the legal machinery governing the public free schools of this state which, in every instance where school funds and property are mentioned, expressly gives the supervision of such funds and property to certain school officers named therein; such as trustees, superintendents, etc. This school law was approved April 15, 1905, just seven days prior to the approval of said auditor's law; both passed by the same Legislature at the same session. Surely in the light of the fact that this school law, which covers or is meant to control and govern such important matters as our public free schools, was passed and approved only seven days prior to the passage and approval of the auditor's law, under discussion, it cannot be concluded or reasonably contended that it was the intention of the Legislature to repeal or nullify any provisions of said recently passed school law by the passage of said auditor's law. On the contrary, the intention of the Legislature evidently was that such power or authority, where it had been granted to the school officers, should remain there. If the county auditor has such control over the school funds, by virtue of the auditor's law, as contended by appellant, many of the vital provisions of the public free school law would be nullified, and the usefulness of the entire machinery of the law concerning and governing public free schools would be seriously impaired, if not effectually destroyed. Such result could not have been the intent or purpose of the Legislature which passed both of the laws under discussion. To hold that such was the intention of the lawmakers would convict them of inexcusable folly.

Our Supreme Court, in the case of Webb County v. School Trustees, 95 Tex. 131, 65 S. W. 878, held that all school funds are state funds, and that the counties in the state, in holding such funds, hold them as trustees, and that the free schools are the beneficiaries; that, when the commissioners' court has seen that the available school funds are paid to the county treasurer for maintenance of the schools for the current year, it has discharged the county from further liability for the same; that thereafter the county school superintendent has control thereof, subject only to the supervision and direction of the state superintendent, and they are no longer subject to the control of said commissioners' court; that the county superintendent of public instruction was a state officer, and that, the state having assumed the functions of maintaining public free schools

for the education of the children throughout its domain, the counties were recognized with reference to that business merely as subdivisions of territory, and some of their officers as proper agents for the administration of affairs relating to the public free schools; that such officers, with respect to such affairs, act for the state and not for the county; that this is true even as to officers who in other respects are county officers in fact as well as in name. The court, in rendering its opinion in said case, says:

"Our organic law, in the article devoted to the subject of public education, contains this emphatic declaration: 'A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the state to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.' Constitution, art. 7, § 1. This devolves the duty of establishing and maintaining public free schools upon the Legislature, and shows that the function of such establishment and maintenance was to be performed by state agencies. Sections 2 and 5 of the same article provide that certain funds and property, including one-half of the unappropriated public domain, shall constitute a public free school fund. Section 5 also declares, in effect, that the annual income derived from the permanent fund, together with the tax provided for in section 3, shall constitute the 'available school fund' of the state, by which is meant the fund which may be appropriated annually to the maintenance of the schools."

Quoting then from section 6 of said article of the Constitution with reference to lands granted the several counties of the state for educational purposes, the court calls attention to that provision which says that said lands, or the proceeds thereof when sold, shall be held by said counties alone as a trust for the benefit of the public schools therein, and says that the several funds so provided for the respective counties were to supplement the portion of the general available fund of the state which should be set apart to the respective counties and to be appropriated solely for the support of the schools established by the state.

The soundness of the opinion just quoted, as well as what we have already said, will hardly be seriously questioned if we consider the law approved April 15, 1905 (Acts 29th Leg. c. 124), for the management and control of the affairs of the public free schools of the state, in connection with the auditor's law, now under discussion, approved April 22, 1905, relating to auditing the finances of the county. Article 2824 gives the school trustees of the common school district absolute control over all the affairs of the district, "subject to the rules and regulations of the county and state superintendents." Article 2822 provides that the trustees of school districts, and their successors in office, shall be a body politic and corporate in law, etc., may contract and be contracted with, sue and be sued, etc. Article 2752 provides that the county superintendent of public instruction shall have, under the direction of the state superintendent of public instruction, the immediate supervision of all matters pertaining to public education in his county.

Since the enactment of the above article, a county board of trustees has been created by law, and by article 2849g of Vernon's Sayles' Ann. Civ. St. 1914, they are made a body corporate, etc. As evidencing the Legislature's recognition of the fact that the public free schools of Texas is a matter under the supervision of the state, and entirely disconnected with county affairs, they provided by article 2849f:

"All rights and powers pertaining to the public free schools of a county that have heretofore been vested in the commissioners' court and that are not prescribed in this act, shall hereafter be vested in the county school trustees," etc.

Article 2849j provides:

"All appeals from the decision of the county superintendent of public instruction shall lie to the county school trustees, and from the said county school trustees to the state superintendent of public instruction, and thence to the state board of education."

Article 4510 (Rev. St. 1911) prescribes the duties and powers of the state superintendent of public instruction, and, among other things, says:

"He shall hear and determine all appeals from the rulings of the decisions of subordinate school officers, and all such officers and teachers shall conform to his decisions, unless they are reversed by the state board of education. He shall prescribe suitable forms for reports required of subordinate school officers and teachers, and blanks for their guidance in transacting their official business and conducting public schools," etc.

Article 2773 provides that all treasurers receiving or having control of any school fund, etc., shall on or before the 1st day of October of each year file with the state superintendent of public instruction an itemized report in duplicate of the receipts and disbursements of the school fund, etc., which reports shall be on the prescribed form furnished by the Department of Education, etc., and provides further:

"The state superintendent in examining any report may call for vouchers and make such investigation of the correctness and legality of the different items as he may deem necessary."

Article 2756 provides that the county superintendent shall approve all vouchers legally drawn against the school fund of his county, etc.

We thus see that the duties that appellant Washburn claims he is to perform with reference to common school districts had, before the enactment of the county auditor law only seven days theretofore, been assigned to the state and county superintendents of public instruction, with the assistance of the county school board, and that every act of the district school trustees called in question is subject to review and revision by said bodies. Article 2729 provides the method by which the state board of education shall make up the apportionment of the state school fund to the several counties and districts of the state. Article 2769

provides what the county treasurer shall do when receiving notice from the state superintendent of the amount apportioned to the school fund of his county. Article 2755 provides what the county superintendent shall do when he receives the certificates showing the apportionment to his county. Article 1460, which provides for the creation of the office of county auditor, provides that he shall receive an annual salary "of $2,400.00 to be paid out of the general fund of the county upon the order of the commissioners' court." No part of the burden of said office is to be borne by the school funds. Article 1461 provides that the auditor shall be appointed by the judges of the county and district courts, or courts having jurisdiction in the county, and that the action of appointing said auditor shall be reported by the county judge to the commissioners' court in regular or special session, which shall have said appointment entered upon the minutes of the court. Article 1464 provides that he may appoint an assistant to act in his stead, who may discharge the duties of his office during his absence or unavoidable detention; said appointment to be made with the consent of the county judge. Article 1465 provides that he may appoint additional clerical help when needed, with the consent of the county judge or of the commissioners' court. Article 1468 gives the auditor continual access to and the right to examine the books, accounts, reports, and vouchers of any of the officers, and "also the orders of the commissioners' court relating to the finances of the county." Article 1473 reads as follows: "The auditor shall see that the law is strictly enforced." Article 1484 provides that the auditor shall not audit any claim or account for supplies or material for the use of the county, or any of its officers, unless they have been legally made, and there is attached thereto a requisition signed by the officer ordering the same and approved by the county judge. Article 1492 provides that the auditor shall prepare an estimate of all the revenue and expenses and annually furnish the same to the commissioners' court, and that the court shall carefully make a budget of all apportionments to be set aside for the various expenses of the county government in each branch and department. Article 1476 provides that he shall prescribe and prepare the forms to be used by all persons in the collection of county revenues, funds, fees, and all other moneys, and the mode and manner of keeping and stating their accounts; also, the mode and manner of making their annual report of office fees collected and disbursed and the amount refunded to the county, etc. This article is in direct conflict with the school law of Texas if the auditor has oversight of the common school districts, because as an incident thereto he must have oversight over the county school superintendent as well. Article 1480, auditor's law, says:

"Supplies of every kind, road and bridge material, or any other material, for the use of said county, or any of its officers, departments or institutions, must be purchased on competitive bids, the contract to be awarded to the party who, in the judgment of the commissioners' court, has submitted the lowest and best bid."

And it provides further that the auditor shall advertise, etc., for said bids, and that the county auditor shall furnish copies of all bids received to the county judge and to the commissioners' court, and that unless they are satisfactory to the county judge or commissioners' court, it shall be the duty of the auditor to reject said bids and readvertise, etc.

A careful study of these articles leads us to the conclusion that, if the auditor's law was intended to apply to the common school districts, then the whole system of school laws were thereby practically abolished and repealed by implication. The commissioners' court, and not the trustees of the district, must be satisfied with and direct the auditor to accept the bid. The auditor accepts the bid and thereby closes the contract, destroying the power conferred upon the board of trustees, "to make all contracts," etc., and the state and county school superintendents lose their power of revision and control.

Article 1481 provides that all bills and accounts must be filed in ample time for the auditor to examine and approve the same before the meeting of the commissioners' court, and that no account shall be paid until the same has been examined and approved by the county auditor, thereby taking from the county superintendent of public instruction the authority to approve vouchers, and by inference, at least, requiring them to go before the commissioners' court with the auditor's approval before they can be paid. In fact, Anderson v. Ashe, 99 Tex. 447, 90 S. W. 874, and Yantis v. Montague County, 50 Tex. Civ. App. 403, 110 S. W. 162, each hold that the auditor's approval is a condition precedent to the exercise of jurisdiction over the claim by the commissioners' court.

Article 1477 of the auditor's law says:

"He shall have the power to adopt and enforce such regulations, etc., as he may deem essential to the speedy and proper collections, checking and accounting of the revenues and other funds and fees belonging to the county."

Article 1478 says:

"All deposits that are made in the county treasury shall be upon a deposit warrant issued by the county clerk in triplicate," etc., "the treasurer shall retain the original; the duplicate shall be signed and returned to the county clerk for the county auditor, and the triplicate signed and returned to the depositors," etc.

We feel that it is useless to quote further from the auditor's act in order to show that the funds over which he is given an oversight and control are strictly county funds, and are not school funds, and that it is apparent therefore that the Legislature did not intend to include the school funds in the term "money, funds, fees or other property

for the use of, or belonging to the county," found in article 1467 of the auditor's law. The authorities cited by appellant are not inconsistent with this view or with the views of the Supreme Court in the Webb County Case, above quoted.

Article 1484 says:

"He shall not audit or approve any claim against the county, unless the same has been contracted as provided by law, nor any account for the purchase of supplies or material for the use of said county, or any of its officers," etc.

While article 1473 says: "The auditor shall see that the law is strictly enforced."

"These expressions, together with similar expressions throughout the law, show that the auditor is clothed with the power and authority to inquire, not only into the question of whether or not the voucher is in proper form, but into the legality of each and every step taken by the officer who made said contract.

In Oge v. Froboese, reported in 66 S. W. 688, our Court of Civil Appeals, speaking through Justice Fly, on the question of whether or not the county treasurer was liable for misapplication of school funds, says:

"To sustain this suit, it must necessarily be held that the county treasurer, in his disbursement of the available county school fund, is clothed with the power and authority to inquire, not only into the legality and validity of every warrant or voucher drawn on him by the school superintendent, but to go back of it, and inquire into and decide upon the legality of any apportionment made by such superintendent. This would be an extraordinary power to invest in any officer, involving, as it would, the power to discontinue, for a time at least, the machinery provided for the education of the children of the state, by withholding the money necessary for carrying on such machinery. To invest a county officer with such weighty authority, there should be some express statutory warrant or sanction. Grants of power to public officers are subject to a strict interpretation, and are construed as conferring those powers only which are expressly imposed or necessarily implied. Meachum, Pub. Off. par. 511. The enforcement of this rule is necessary for the protection of public interest, and must be kept in view in the consideration of the acts of public officers."

As further evidence that the Legislature did not intend to include the school funds in the phrase of the auditor's law, in question, as county funds, they had only a few days prior to the passage of said auditor's act, by articles 2760 and 2761, provided that a child might be transferred from a school district in one county to an adjacent district in another county, and that such child's portion of the school fund may be transferred to such adjacent district in said other county; such transfer to be made by the county school superintendent, upon the application of the parent of said child. Such provision is inconsistent with the contention of appellant, either that the Legislature intended to speak of the school fund, as funds for the use of or belonging to the county, or that the county

auditor was to exercise oversight of such funds.

Having definitely reached the conclusion that the county auditor has no authority to exercise any oversight or supervision over the school funds, we hold that the trial court did not err in granting the orders prayed for, and therefore the judgment of the trial court is affirmed.

Affirmed.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes