WATSON, Tax Collector, et al. v. EL PASO COUNTY. (No. 799.)

(Court of Civil Appeals of Texas. El Paso. March 9, 1918.)

1. SCHOOLS AND SCHOOL DISTRICTS ⬤═▷106— COUNTY TAX COLLECTOR—SCHOOL TAXES— LIABILITY TO COUNTY.

A county cannot sue the county tax collector for taxes collected for either independent or common school districts under Rev. St. 1911, arts. 2767, 2822, 2836, 2861, 2862, giving school districts power to sue or be sued, and providing that school taxes be paid to or deposited to the credit of the school districts.

2. DRAINS ⬤═▷90—COUNTY TAX COLLECTOR— DRAINAGE TAXES—LIABILITY TO COUNTY.

Although drainage districts are the owners of funds and may sue and be sued under Rev. St. 1911, art. 2584, the county may sue the county tax collector therefore, in view of Rev. St. 1911, arts. 2533, 2540, 2541, 2603, 2605, 2606, providing for handling and disbursing of such funds, but a county cannot recover under allegations that such funds belonged to the county.

3. TAXATION ⬤═▷568(2) — COUNTY TAX COLLECTOR—BONDS.

Collected taxes in hands of the tax collector are secured by his general county bond and not the bond required by Rev. St. 1911, art. 2605, "to secure the collection of said taxes."

4. TAXATION ⬤═▷917 — PAYMENT TO COUNTY BY CHECK.

A county treasurer is not authorized to accept a check from the tax collector for the taxes, but, where the amount of the check has come under the control of the county, the right of action against the collector is extinguished.

5. DEPOSITARIES ⬤═▷9 — COUNTY DEPOSITARY —CHARGING BACK DISHONORED CHECKS.

Where a county depositary credits to the county the amount of a check drawn by the county tax collector and deposited by the county treasurer, it cannot be charged back to the county upon dishonor of the check, under Rev. St. 1911, arts. 1485, 1505, 1509, 2440–2444, 2447, 2449, providing methods for withdrawing funds from the depository, no matter what the understanding with the treasurer, because the county is not a party to any such transaction.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by El Paso County against Will I. Watson, Tax Collector, and others as his sureties. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Frank Judkins, J. F. Woodson, and Thornton Hardie, all of El Paso, for appellants. C. W. Groom and W. H. Fryer, both of El Paso, for appellee.

HIGGINS, J. At the November election in 1914, Will I. Watson was elected tax collector of El Paso county. He gave the bond required by article 7610, R. S., payable to the county judge and his successors in office, conditioned that he would faithfully perform and discharge all of the duties required of him by law as tax collector. Watson entered upon the. discharge of his duties and continued to act as tax collector until July 15, 1916. El Paso county brought this suit against Watson and the sureties upon his bond.

It was alleged that as collector there came into his possession the total sum of. $567,728.-65, for and on behalf of and for the use and benefit of El Paso county, and that it was his duty to account for said money belonging to El Paso county, and to pay same to the county treasurer; that he had failed to so pay the same except the sum of $539,493.21, and the further sum of $337.33, then on deposit in the Texas Bank & Trust Company and available for the use of El Paso county, leaving the net amount of $27,898.11, which Watson failed and refused to pay to the county treasurer.

A further cause of action was set up in paragraphs 10 to 13, inclusive, of the petition. This cause of action has no relation to that heretofore stated, but relates to the right of Watson to retain certain fees and commissions. Upon trial a peremptory instruction was given to find for the county against Watson and his sureties in the sum of $15,675.19. Verdict was returned and judgment rendered in accordance with this instruction. Watson and his sureties appeal.

The evidence discloses that Watson had collected current and occupation taxes amounting to $563,557.15; costs, $3,481.00; unreported occupations $690.50; making a total of $567,728.60. The evidence further shows that included within the item of $563,-557.15 so collected was $37,014.55 for school districts and $3,657.82 for a drainage district. There is no evidence that Watson has not paid to the drainage and school districts the taxes collected for them.

[1] 1. The contention is made that the county is not entitled to receive or sue for the taxes collected for school districts. If this be sustained, the judgment rendered cannot be upheld upon the pleadings and evidence presented by the present record. For if the school tax collections be deducted from Watson's total collections, the balance will be $530,714.05, and it was, alleged and proven by the county that Watson has paid its treasurer the sum of $539,493.21. It would thus appear under the pleadings that he has already paid more than the county is entitled to.

The record is not clear whether the school districts are independent or common, but it makes no difference to which class they belong.

As to independent school districts, it is plain the county has no authority to receive or sue for taxes collected by the county tax collector belonging to such districts. Such taxes are payable to the treasurers of the

⬤═▷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

districts. Articles 2861, 2862, and 2891. Those districts are the ones to sue for any moneys belonging to them collected by the county tax collector and not accounted for by him to their respective treasurers. House v. Dallas, 96 Tex. 594, 74 S. W. 901; Moody v. Chesser, 173 S. W. 917; Connor v. Zachry, 54 Tex. Civ. App. 188, 115 S. W. 867, 117 S. W. 177; Miller v. School District, 26 Tex. Civ. App. 495, 63 S. W. 894.

As to common school districts, the same rule applies. Their trustees are bodies corporate with power to sue and be sued. Article 2822, R. S. Article 2836, R. S., requires the tax collector to pay all common school district taxes to the county treasurer, and that said treasurer shall credit each school district with the amount belonging to it and pay out the same in accordance with the law. And article 2767 provides that the term "county treasurer," as used in all provisions of law relating to school funds, shall be construed to mean the county depositary.

It thus appears that no part of common school district taxes are even payable to the county treasurer of El Paso, but were payable by Watson direct to the county depositary, whose duty it was to credit the funds to the respective districts. The county did not own the funds collected by Watson for common school districts, and had no authority to recover same. The trustees of the various districts were the proper parties plaintiff. Possibly the depositary also might maintain the suit. See cases cited above and the following: Bank v. School District, 185 S. W. 589; Jernigan v. Finley, 90 Tex. 205, 38 S. W. 24.

We are aware that in Poole v. Burnet County, 97 Tex. 77, 76 S. W. 425, and Kempner v. Galveston County, 73 Tex. 216, 11 S. W. 188, suits were maintained by counties against their treasurers to recover school funds. But the funds involved in those cases were the available fund and the permanent school fund. The permanent fund of course belongs to the county. So does the available fund until it has been apportioned and set aside to the different school districts. This is the distinguishing feature of these, and possibly some other cases appearing in the reports.

[2] 2. As to the item of $3,657.82 taxes collected for drainage districts, it appears that drainage districts, by and through the drain commissioners, may sue and be sued. Article 2584, R. S. Such districts are the owners of funds collected by taxation for its benefit. They could properly sue to recover any funds belonging to it, but in view of statutory provisions the county, through its commissioners' court, is charged with such duties and responsibilities respecting such funds that it too may sue to recover the same in order that it may discharge its duties.

A consideration of these provisions discloses that under the subject of "Drainage," article 2533, R. S., makes it the duty of the tax collector to collect drainage taxes and to report to the county treasurer the amount of taxes collected, and it is the duty of the treasurer to keep a separate account of all taxes so paid over to him. Article 2540 provides that the commissioners' court shall pay the drainage contractor, or persons constructing the drain, out of any fund in the county treasury collected as aforesaid, etc. Article 2541 provides that it shall be the duty of the commissioners' court to audit all claims against the county for work and expenses under the provisions of that chapter, and for all claims allowed said court shall, by an order duly entered upon its minutes, direct the clerk of the county to issue a warrant payable out of the drainage funds and directed to the county treasurer for the amount allowed by the court.

"Under chapter 4, on subject of drainage by districts, article 2603, it is provided: 'That in the assessment and collection of taxes authorized by this act, said assessor and collector shall have the same powers and shall be governed by the same rules, regulations and proceedings as are provided by the laws of this state for the assessment and collection of taxes for state and county purposes, and as otherwise provided for in this act.'

"Article 2605 provides: 'The tax collector of the county shall be charged by the commissioners' court with the assessment rolls of the drainage district, and he shall be allowed such compensation for the collection of such taxes as he is now allowed for the collection of other taxes. The county commissioners' court shall require the tax collector of the county to give an additional bond or security, in such sum as they [may] deem proper and sufficient to secure the collection of said taxes.'

"Article 2606 provides: 'It shall be the duty of the tax collector to make a certified list of all delinquent property upon which the drainage tax has not been paid, and return the same to the county commissioners' court, which shall proceed to have the same collected by the sale of such delinquent property, in the same manner as now provided for the sale of property for the collection of state and county taxes,' etc."

It thus appears that the commissioners' court is charged with duties and responsibilities respecting funds belonging to drainage districts which imperatively demand and authorize the county to sue for the recovery of funds belonging to such districts which have been collected by the tax collector and for which he has failed to account. Unless it have this authority, the commissioners' court cannot discharge the duty imposed upon it. However, such recovery cannot be had upon an allegation that such funds belonged to, and had been collected for, the county.

[3] But in this connection, it is contended by the sureties that the payment of the taxes collected by the collector is secured, not by the general county bond upon which they are sued herein, but upon the bond which article 2605 requires to be given by the tax collector. The bond mentioned in this article is required to be given by the tax collector "to secure the collection of said taxes." It is not to secure the payment of the taxes by the tax collector to the county treasurer after he has collected the same. The general coun-

ty bond secures such payment, and for that reason there is no merit in this contention. Kempner v. Galveston County, supra.

3. It is contended that Watson cannot be charged with commissions allowed him on state collections, as there is no valid law authorizing a county to collect as money belonging to it any part of such commissions. Article 3, § 48, of the Constitution, provides that the Legislature shall not have the right to levy taxes or impose burdens upon the people except for certain purposes there enumerated. Section 51 of the same article provides as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporation whatsoever."

It is asserted that, since commissions on state collections are part of the state taxes, the Legislature could not lawfully make a gift of these commissions to the county; that it is a giving of a part of the state taxes, a part of the public moneys, to the county, prohibited by the constitutional provisions cited. The question involved becomes academic and unnecessary to be decided in view of the fact that the amount of Watson's commissions on state collections is less than the salaries of his office to which he was properly entitled. Clark v. Finley, 93 Tex. 171, 54 S. W. 343.

4. J. D. Ponder was the treasurer of El Paso county. Watson kept his funds in the Texas Bank & Trust Company. This bank will hereafter be referred to as the Texas Bank. The Union Bank & Trust Company (hereafter referred to as Union Bank), was the county depositary. About May 15, 1916, Watson delivered to Ponder his check in the sum of $11,082.73, drawn upon the Texas Bank to cover county tax collections. This check with its indorsements reads:

"Will I. Watson, Tax Collector. No. 628. El Paso, Texas, May 1st, 1916. Pay to the order of J. D. Ponder, Co. Treas., $11,082.73 eleven thousand eighty-two and 73/100 dollars. Will I. Watson, Tax Collector. To the Texas Bank & Trust Company, El Paso, Texas."

Indorsed on back:

"J. D. Ponder, Co. Treas."

Also has stamped on back:

"Paid—6—July 1, 1916. Union Bank & Trust Co. Through El Paso Clearing House."

Also:

"Paid—6—July 3, 1916. Union Bank & Trust Co. Through El Paso Clearing House."

Upon receipt of the check, Mr. Ponder receipted Watson for $11,082.73 by instrument which reads:

"No. 696. $11,082.73. The treasurer of El Paso County, Texas, will receive from Will I. Watson, the sum of $11,082 & 73/100 dollars, and credit to account of funds named in reverse hereof. E. B. McClintock, County Clerk, by John T. Cain, Deputy. El Paso, Texas, 5—8—16."

On back:

"Treasurer's Office El Paso County, Texas. El Paso, Texas, 5—8, 1916. Received in the treasury the amount on reverse hereof to be credited to the following funds:

"Available:
General ......................$2,294.58
Road and bridge.................. 1,349.87
Jury ........................... 5,614.19

"Sinking funds:
Road and bridge special bonds....... 575.82
Poor farm bonds................... 57.56
Courthouse and jail addn. bonds...... 17.92
Road and bridge imp. and maint. bonds 355.09
Courthouse and jail refunding bonds.. 20.48
Courthouse addition No. bonds...... 67.16
Jail addition No. 2 bonds............ 31.35
Courthouse and jail (new) bonds..... 673.09
Road district No. 1 bonds............
Road district No. 2 bonds...........
Poor farm No. 2.................... 25.62
                                   ─────────
   Total ......................$11,082.73

"J. D. Ponder, County Treasurer."

Credit to Watson for the amount of the check was entered and carried on the treasurer's books until October 17, 1916. Every payment which had been made by the collector to the treasurer was by the same check method.

At the time the check was delivered, Watson had ample funds in the Texas Bank to pay same. Ponder held the check until June 30, 1916, when he presented it to the Union Bank. Upon its presentation the Union Bank gave Ponder credit therefor on his treasurer's book. Ponder kept the funds deposited with the Union Bank in the name of "El Paso county," and the county received credit for this check from the Union Bank. While the check was held by the treasurer from May 15th to June 30th, Watson's funds in the Texas Bank had been checked out for other purposes, and upon presentation of the check to the Texas bank its payment was refused. Thereupon the Union Bank charged back to the county the amount of the check, and notified Ponder to that effect by letter dated July 7, 1916. There is no evidence to show that this check was taken by the Union Bank for collection, and Mr. Ponder testified that his bank always accepted checks deposited by him as so much cash. Upon this state of facts, the question arises as to the right of the county to recover of Watson and his sureties the amount of the check.

In passing upon this question, it will be well to first consider some statutory provisions. It is the duty of commissioners' courts to select some banking corporation, association, or individual as the depositary of the funds of the county. It selects as the depositary of all the funds of the county the one offering to pay the highest rate of interest. When selected, the depositary gives a bond conditioned for the faithful performance of all the duties and obligations devolving by law upon such depositary, and for the payment upon presentation of all checks drawn upon said depositary by the county treasurer of the county, and that said county funds shall be faithfully kept by said depositary and accounted for according to law. When this bond is given and approved, such

banking corporation, association, or individual is selected as the depositary of the county funds, and it thereupon becomes the duty of the treasurer to transfer to the depositary all the funds belonging to the county, and upon the receipt of any money thereafter to deposit same with the depositary *to the credit of the county.* (Italics ours).

It is the duty of the depositary to provide for the payment, upon presentation at the county seat, of all checks drawn by the treasurer upon the funds of the county as long as funds of said county treasurer shall be in the possession of the depositary subject to such checks. No money belonging to the county shall be paid by the depositary, except upon check of the treasurer. Articles 2440–2444, 2447, 2449, R. S. It is the duty of the county treasurer to receive all moneys belonging to the county from whatever source they may be derived, and to pay and apply the same as required by law, in such manner as the commissioners' court of his county may require and direct. He shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same. Articles 1505 and 1509, R. S. In all counties having an auditor, all warrants on the county treasurer, except warrants for jury service, must be countersigned by the auditor. Article 1485, R. S.

Taxes are payable to the collector in currency or coin, except county ad valorem taxes, which may be paid in county script. When collected, the taxes, at the end of each month, must be paid by him to the proper authority, who is the county treasurer. Articles 7358, 7614, and 7619. When the tax rolls are delivered to the tax collector, he is charged up with the amount assessed and due the county. One of the ways in which he can discharge this indebtedness is by filing the receipt of the county treasurer for the money paid into that treasury. Articles 1408, 1409. All deposits made in the county treasury shall be upon a deposit warrant issued by the county clerk in triplicate, authorizing the treasurer to receive the amount named, for what purpose, and to which fund the same shall be applied. The treasurer shall not under any circumstances receive any money in any other manner than so stated. Article 1478.

[4] Appellee contends that the treasurer was not authorized to receive from Watson anything but cash in settlement of tax collections. This is correct. Upon this premise it is further contended that the check received was not cash, and since Ponder had no authority to receive the same from Watson the county can recover the amount thereof from the latter and his sureties. If the cash which this check represented never came into the custody and control of the county, this contention would be well taken. On the other hand, it is not well taken if the amount of the check came into the custody and control of the county. This, so far as the county was concerned, would constitute a payment and extinguish any cause of action against Watson and his sureties.

[5] Let us examine this question. While it is true the collector must pay in cash to the county treasurer the moneys in his possession belonging to the county, and while the treasurer must deposit such moneys in the depository, yet there is no law which undertakes to prescribe the manner in which these settlements shall be made between the collector, the treasurer, and the depositary. They may adopt such methods as may be convenient to them, provided the necessary funds are placed in the county depository to the credit of the county. The law does not contemplate that the identical money of the county placed in the depository shall remain there. The county simply gets credit for such deposits. This court considers that whenever a fund due the county has been credited to the county by the depositary, such fund has come into the possession of the county, and is subject to the control of the county, and it constitutes payment to the county; that such fund cannot be withdrawn from the county depositary except upon checks of the treasurer, drawn by authority of lawful warrants, and countersigned by the auditor; that when the depositary of El Paso county credited the amount of Watson's check to the credit of the county treasurer, it in law constituted a payment to the county of the amount of the check and that the depositary became liable to the county for the amount thereof; and the charging back of the check was an unauthorized withdrawal of county funds.

In this transaction, the Union Bank occupied a dual position, viz.: (1) As a banking institution, and (2) as the county depositary. As a banking institution, it makes loans, receives deposits, issues bills of exchange, and does various other things common to such an institution. As the depositary, it does not do these things, but takes funds belonging to the county, and assumes responsibility therefor, giving bond to the county to protect against loss. When funds of the county are placed in the depository, the county has in no case more than a credit secured by bond; the identical money deposited does not remain there.

Suppose Mr. Ponder had cashed this check at the First National Bank on his indorsement and placed the money to the credit of the county in the depository, and the payment of the check upon presentation to the Texas Bank had been refused. Could it be said that the county would still have a cause of action against the collector on his bond? There would have been a cause of action, not by the county, because it had received the money, but by the First National Bank against Ponder as indorser, and Watson as drawer, and the suit would have been on the check.

Suppose, in settlement of the $11,082.73 indebtedness, Watson had executed a note to Ponder which Ponder negotiated at the Union Bank and deposited the proceeds to the credit of the county. If the note was not paid at maturity, could the Union Bank charge the county with the amount thereof? Certainly not. Now, in effect, what was actually done was that supposed in the first instance. The Union Bank as a banking institution accepted the check from Ponder and gave the county credit therefor. It became the owner of the check, and could do whatever it pleased with it. When its payment was refused, it had no authority to withdraw a credit which it, as county depositary, had theretofore given to the county. The charging back of the amount of the check was in effect a withdrawal of county funds from the depository without lawful authority. It must be remembered that the county was in no wise a party to this check, and made no agreements, express or implied, concerning or respecting same. Ponder and the depositary in handling the same did so at their own risk. It was within the province of the treasurer and the Union Bank to accept the same for collection only, and not pass it to the credit of the county until it had been paid. In such a case, the funds which the check represented would never have been credited to the county, the county would never have come into the possession of the money, it would never have become subject to the control of the commissioners' court, and a suit by the county upon the tax collector's bond could certainly have been maintained.

Appellees call attention to cases holding that an agent authorized to collect his principal's debts cannot accept payment in anything other than money, and that delivery of a check as a substitute for money does not constitute a payment until accepted as such and actually paid in due course. Western, etc., v. Maverick, 4 Tex. Civ. App. 535, 23 S. W. 728; Potter v. Sager, 98 Misc. Rep. 25, 161 N. Y. Supp. 1088, and many others.

The correctness of these holdings is undoubted. But they are not in point, for the reason that the money represented by the check never reached the principal. Suppose such agent had procured the cash upon the check from some person other than the drawee, and the amount of the check had been placed to the credit of his principal in the depository of his principal's funds. Certainly then the principal could maintain no action against the original debtor, because he had received his money; and if the depositary undertook, without authority, express or implied, to charge the amount back to the principal, it would be unlawful and the principal's cause of action would be against his depositary.

Here Ponder was the agent of the county to receive payment from Watson. He had no authority to accept a check in payment of Watson's indebtedness. But he received a check, and from the Union Bank upon that check he had passed to the credit of the county the amount thereof. If the county had not received this credit, the authorities relied upon would be applicable and the right of the county to recover of Watson and his sureties would be clear. But, as stated, the credit was entered in favor of the county, and unless there was some authority, express or implied, for the depositary to charge this check back against the county, then it was unlawfully done.

There is no authority in the statute for county depositaries to so withdraw county funds. As stated above, the county was not a party to the check, or to the course of dealing between Watson, Ponder, and the depositary, and there was no agreement upon its part, express or implied, to authorize the depositary to charge back the check. If there was such agreement between the depositary and Mr. Ponder, the county is in no wise affected thereby.

Upon this view of the case, it makes no difference if there was an express or implied agreement by Ponder authorizing the depositary to charge back to the county checks which he had deposited, if not paid, nor does it make any difference whether there was an agreement between Ponder and the depositary that the check was accepted conditionally for collection. Funds credited to the county by its depositary cannot be charged back simply upon agreements made by its treasurer.

We therefore hold that, so far as the county is concerned, it has received payment of the amount of the check by credit allowed therefor by its depositary, and that the depositary and its bondmen are liable to the county for the amount thereof. Since it has received such payment, it has no cause of action in respect thereto against Watson and the sureties upon his official bond. Two Iowa cases seem to support the conclusion reached: Griffin v. Erskine, 131 Iowa, 444, 109 N. W. 13, 9 Ann. Cas. 1193; Harbach v. Colvin, 73 Iowa, 638, 35 N. W. 663. See, also, in support generally of this view, Kempner v. Galveston Co., 73 Tex. 196, 11 S. W. 194; Kempner v. Galveston County, 76 Tex. 450, 13 S. W. 460; Ward v. Marion County, 26 Tex. Civ. App. 361, 62 S. W. 557, 63 S. W. 155; Anderson v. Walker, 93 Tex. 119 at 130, 53 S. W. 821; Burton v. United States, 196 U. S. 283, 25 Sup. Ct. 243, 49 L. Ed. 482; 7 Corpus Juris. 635; Haas v. Fruit Co. (Mo. App.) 183 S. W. 676; Bank v. Bank, 241 Fed. 1, 154 C. C. A. 1; Wasson v. Lamb, 120 Ind. 514, 22 N. E. 729, 6 L. R. A. 191, 16 Am. St. Rep. 342; Auto Co. v. Bank, 116 Md. 179, 81 Atl. 294.

Cases which seem to recognize the distinction made between the case of the mere unauthorized acceptance of a check by a collecting agent in settlement of his principal's debt, and a case where the money upon the check

is obtained by the agent and passes into the hands of the principal or the depositary of his funds, are: Western, etc., v. Maverick, 4 Tex. Civ. App. 535, 23 S. W. 728, and Burnstein v. Sullivan, 134 App. Div. 623, 119 N. Y. Supp. 317.

5. As to the fourth proposition under appellant's fifteenth assignment, our attention is not called to any evidence showing that the item of $2,967.02 was paid by Watson out of funds collected during his second term of office. For this reason, it is unnecessary to further consider the question presented.

6. The cross-assignments presented by appellee are considered to be without merit.

For the reasons indicated, the cause is reversed and remanded.

WALTHALL, J., not sitting.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes