A. J. JERNIGAN, COUNTY TREASURER, v. R. W. FINLEY, COMPTROLLER.

Decided November 23, 1896.

1. Mandamus to Head of Department.

The Supreme Court has power to issue a writ of mandamus against the Comptroller or other head of department of the State government. (P. 210.)

2. Issuing Warrant for School Fund.

The duty of the Comptroller to draw his warrant in favor of a County Treasurer for the available school fund apportioned to the county by the Board of

Education and set apart by the State Treasurer on the first of the month, in the pro rata distribution of such funds coming to his hand during the preceding month, as provided by Rev. Stats., arts. 3924, 3924a, 3926a, is an imperative obligation enjoined by the law making power, the performance of which may be compelled by the writ of mandamus from the Supreme Court. (Pp. 210, 211.)

3. Same—Right of Treasurer to Sue.

The county, as a corporation, has no interest in and is not trustee of the school fund, and its Commissioners Court is neither custodian nor disbursing agent of such fund set apart by the State to the counties. The County Treasurer, in the exercise of the powers conferred on him by the school law over such fund, acts for the State and, having the duty of collecting the warrants issued therefor, was the proper party to bring suit for mandamus to compel the issuance of such warrant by the Comptroller. (It is otherwise, it seems as to lands, or their proceeds, set apart to the counties respectively for school purposes, title thereto being vested in the respective counties.) (Pp. 211, 212.)

4. Same—Indebtedness of County to State.

The provision of art. 2831, Rev. Stats., that no warrant shall issue in favor of any one indebted to the State until such debt be paid, does not justify the Comptroller in refusing to issue such warrant to the County Treasurer. To justify this offset the person must be the State's debtor and the State's creditor in the same right, and this warrant is claimed in his right as Treasurer of the school fund, not of the county. (Pp. 212, 213.)

5. Same—School Fund—Constitution.

Had the Legislature explicitly authorized such offset, the law would have been in violation of art. 7, sec. 5, of the Constitution, in that it indirectly appropriated the school fund to a purpose other than the support of schools. (P. 213.)

PETITION for writ of mandamus, brought by the County Treasurer of Travis County against the Comptroller, to compel the issuance of a warrant for school funds set apart to the county.

Geo. Calhoun, County Attorney, and G. W. Allen, for petitioner, A. J. Jernigan, County Treasurer.—The Supreme Court has authority to issue a mandamus against the Comptroller of Public Accounts of the State of Texas, he being a State officer, to compel him to perform any ministerial duty. Constitution sec. 3, art. v.; Rev. Stats. art. 946; Pickle v. McCall, 86 Texas, 212; Sansom v. Mercer, 68 Texas, 488; Commissioner v. Smith, 5 Texas, 479.

The petitioner has the right to bring and maintain this suit in his official capacity as County Treasurer of the school fund of Travis County, Texas, because the petition for mandamus shows that the certificate for the amount due the school fund of Travis County, Texas, was issued by the proper authorities of the State of Texas and that such certificate made such fund payable to the petitioner in his official capacity. Rev. Stats. arts. 795, 796.

The statute requiring all suits by or against any county of the State, to be brought in the name of such county, is substantially complied when brought in the name of an individual or official of the county, when the petition shows affirmatively that such suit is brought for the use and benefit of the county. Smith v. Wingate, 61 Texas, 54; Martel v. Somers, 26 Texas, 551; Price v. Wiley, 19 Texas, 142.

This is not a suit against the State, because the fund upon which it is sought to have the State Comptroller draw his warrant, has already been

set apart and appropriated by the proper authorities to the public free school fund of Travis County, Texas.

A county is not subject to the provisions of articles 2831 and 3270 of the Revised Statutes of Texas, because a county is neither a "person" nor a "corporation," within the meaning of the statute. Ritz v. City of Austin, 1 Texas Civ. App. 455; Heigel v. Wichita County, 84 Texas, 392; City of Laredo v. Nalle, 65 Texas, 359; Endlich on Interpretation of Statutes, secs. 89, 167 and 251; Re Fox, 52 N. Y., 530; United States v. Fox, 94 U. S., 315; Memphis v. Laski, 9 Heisk, (Tenn.) 511; State v. Wilson, 12 Lea (Tenn.) 246; Ballentine v. Pulaski, 15 Lea (Tenn.) 633; Baltimore v. Root, 8 Md., 95; Bulkley v. Eckert, 3 Pa. St., 368; Moers v. Reading, 21 Pa. St., 188; Schuyler County v. Mercer County, 9 Ill., (4 Gilm.) 20.

The respondent cannot plead in defense of the petitioner's prayer, and set up facts as to the indebtedness of Travis County, Texas, to the State of Texas, because this court has no jurisdiction to render judgment against the county on such counter-claim or set-off, or to hear and determine the issues involved in the answer of respondent. Constitution art. 5, sec. 3; Rev. Stats. art. 946; Boudon v. Gilbert, 67 Texas, 689; Craddock v. Goodwin, 54 Texas, 578.

The facts alleged in the answer of respondent do not constitute any defense to petitioner's cause of action, because the respondent does not allege in said answer that the claim of the State of Texas against Travis County, which is pleaded as a set-off or counter-claim, has ever been presented to the Commissioners Court of Travis County, Texas, for allowance, and that said court has refused or neglected to audit and allow such claim. Rev. Stats. art. 790; Hohman v. Comal County, 34 Texas, 37; Norwood v. Gonzales County, 79 Texas, 218; Chevallier's Admrs. v. State, 10 Texas, 315; Borden v. Houston, 2 Texas, 594; Bates v. Republic, 2 Texas, 616.

The facts alleged by the respondent do not constitute any defense to petitioner's cause of action, because he does not allege in said answer that the Commissioners Court complied with the Constitution and Laws of the State of Texas in force at the date of the issuance of the bonds described in said answer. Constitution art. 11, sec. 7; Rev. Stats. ch. 2, title 25.

The answer of respondent is defective in that it does not allege therein that the bonds, which he pleads as a set-off or counter-claim to petitioner's cause of action, were purchased from Travis County, Texas, or from any one authorized by said county to act in the negotiation or sale of such bonds, by the Board of Education of the State of Texas, or that the county received the proceeds of such sale. Rev. Stats. art. 3894.

The respondent cannot plead, as an offset to petitioner's cause of action, the indebtedness of Travis County to the State of Texas, such indebtedness being evidenced by bonds of said county issued for bridge purposes, when the fund which the petitioner seeks to have the respondent

draw warrant against is the available school fund of the State of Texas, set apart and appropriated by the proper authorities to the public free schools of Travis County, Texas. Constitution sec. 5 art. 8; Rev. Stats. arts. 3926a, 3928, 3934a.

Because the respondent has not filed such answer as is required by law, the petitioner is entitled to the relief sought. Sansom v. Mercer, 68 Texas, 488.

*M. M. Crane*, Atty.-General, for respondent.—The Comptroller challenges the right of the plaintiff to bring this suit, but insists that: (1) It should be brought by the county. (2) · It is a suit against the State. (3) This court has no jurisdiction of any mandamus not necessary to enforce the jurisdiction of this court. Without waiving these questions, it is submitted that on the merits the plaintiff is not entitled to the relief sought.

The certificate of the Attorney-General that the bonds have been issued in accordance with law, and that they are valid and binding obligations on the county is prima facie evidence of the validity of the bonds and the coupons thereto attached which have been purchased by the Board of Education. Rev. Stats. art. 3872. This prima facie evidence becomes conclusive evidence in the absence of any controversy in reference to the facts recited in said answer.

The payment by the county to the State of the interest due on these bonds is a waiver of any irregularity in their issuance, and they therefore become binding upon the county. In cases like this, where the proceeds of the sale of the bonds have been paid to the lawful officers of the county of Travis, and by them invested in property for the county, the county is estopped from pleading any defense until that money with accumulated interest is returned to the school fund. Rev. Stats. art. 3894. In this case, however, it will be unnecessary to decide more than that the bonds are prima facie valid, and the facts contained in the certificate of the Attorney-General not having been disputed, that prima facie case becomes conclusive. For the purposes of this case therefore, it must be held that the county is indebted to the State of Texas, and the relation of debtor and creditor between the State and county must be recognized in this case.

Article 2831 Rev. Stats. says that "No warrant shall be issued in favor of any person, or agent or assignee of any person, indebted to the State until such debt be paid." Counsel for the plaintiff in this case seek to avoid the effect of this statute by saying that the county of Travis is neither a person nor a corporation within the meaning of the law. It is seemingly conceded by them that "person" includes a corporation. This is settled by article 3270 Rev. Stats. A county is a corporation, or, in the language of the statute "is a body corporate and politic," art. 789. Counties are treated as persons and corporations by the courts of the country.

They are treated as municipal corporations by the Supreme Court. City of Laredo v. Nalle, 65 Texas, 362.

That statute requiring presentation of claims to the Commissioners Court does not apply in this case. We are not seeking a judgment against the county, nor asking for a mandamus to compel it to pay its indebtedness. But we are simply undertaking to show that the county is indebted to the State. It has never been declared by the statute, nor by the courts in this country, that a county is not indebted until a claim has been presented to the Commissioners Court for allowance. But the right to sue and enforce the collection of certain classes of claims does not exist until, the county shall have had an opportunity to pay them.

Article 790 cited by counsel for plaintiff, says that no county shall be "sued" unless the claim upon which such suit is based shall have first been presented to the County Commissioners Court for allowance, and such court shall have neglected or refused to audit or allow the same or any part thereof. The State is not suing the county. But the State is asserting that the obligation of the county exists, upon which the suit may be maintained. And because the county has failed to discharge that obligation we are insisting that the State ought not to be compelled to pay the county money that it now claims. Manifestly the statute has no application in this case. Indeed it may well be doubted whether the statute was ever meant to apply to liquidated demands. The word "claim," as we believe, was intended to mean an unliquidated demand. Because when a county issues its bonds, properly authenticated by the proper officers, and by the orders of the Commissioners Court, it seems to me these claims have already been audited and allowed, and no further order of allowance ought to be necessary to enable the State to maintain a suit thereon. But, as before suggested, that question does not arise in this case, as we are not suing on the bonds or coupons.

The suggestion that the plaintiff in this case is seeking to compel the payment of some of the available school fund to the county, and that the State is setting up that the county owes it a bridge indebtedness, is without force. Because interest due on the bridge bonds constitute a part of the available school fund, and that is what we are complaining of. The money which plaintiff seeks to collect from the State treasury is part of the available school fund. They both constitute one and the same, and if Travis County is permitted to get her share of the available school fund which other counties have paid into the treasury, and refuses to pay her interest, which constitutes another portion of the available school fund, she is simply getting her share of the school fund to be distributed among all other counties, and at the same time permitted to retain in her treasury a portion of the available school fund which ought to be always apportioned among the other counties.

GAINES, CHIEF JUSTICE.—This is an original proceeding for a writ of mandamus, instituted by the petitioner as County Treasurer of Travis

County, against the respondent as Comptroller of the State of Texas, to compel the latter to issue his warrant, as Comptroller, upon the State Treasurer, in favor of petitioner in his official capacity, for the sum of $277.85,—that being a part of the amount set apart to Travis County by the State Board of Education, as its portion of the available school fund for the scholastic year beginning September 1, 1895. The petition alleges in substance, that the Board of Public Education, as was its duty to do, on or before the first day of August, 1895, made an apportionment of the available school fund of the State for the scholastic year beginning September 1, 1895, and ending August 31, 1896; that in said apportionment the sum of $20,086.50 was set apart to Travis County; and that thereupon the Superintendent of Public Instruction issued to the petitioner, as County Treasurer of Travis County, a certificate of the sum so apportioned, with coupons attached as required by law, but that after payment of four of such coupons, the State Treasurer, from funds in his hands for that purpose, set apart the sum of $277.85 to be paid to Travis County upon its coupon No. 5; and that the respondent had refused upon demand to issue his warrant for the sum so set apart.

The respondent has demurred to the petition, claiming:

1. That the court has no jurisdiction to issue a writ of mandamus against him as Comptroller;

2. That this is a suit against the State, and cannot be maintained; and

3. That the plaintiff, as County Treasurer, has no authority to bring the suit.

After a general denial (which, in a case of this character, is of no effect under our decisions) the respondent answered specially that Travis County is indebted to the State upon certain bonds bearing interest payable annually, amounting in the aggregate to the sum of $104,000, principal,—which bonds had been issued by the proper officers of the county and had been purchased by the State for the benefit of the school fund; that the county had made default in the payment of the interest on such bonds, and that therefore it was not entitled to draw any money from the State treasury until its indebtedness was discharged.

The petitioner interposed a demurrer to this answer.

None of the grounds of the demurrer to the petition can be sustained.

1. That the court has the power to issue a writ of mandamus against the Comptroller or other head of department of the State government has been repeatedly decided. (Thompson v. Baker, opinion this day delivered.)

2. The statutes make it the duty of the State Treasurer on the first day of each month to "set apart to each county, city or town such a portion of the available free school fund as has come into his hands during the preceding month, as is shown by the certificates held by them to be due to each, upon a pro rata distribution thereof, and he shall notify each local treasurer of the school fund, through the State Superintendent of Public Instruction, of the amount which can be paid on the remaining

coupons, until the whole amount of apportionment to each county or independent school district has been paid;" and also provide, that "said money so set apart shall not be used by the State Treasurer for any purpose other than to pay the warrant drawn by the State Comptroller upon presentation of such coupons." Rev. Stats. 1895, article 3926a. Articles 3924 and 3924a also direct that "the Comptroller shall keep a separate account of the available school fund arising from every source. He shall draw his warrant in favor of the Treasurer of the school fund of each county, city or town that has control of its public schools, in such sum as each is entitled to upon a pro rata distribution of the available school fund in the hands of the State Treasurer, upon the presentation to him of a coupon properly filled out and receipted by the said local treasurer;" and that "the Comptroller shall, at the time the certificates of apportionment are issued, advise the county Treasurer of each county of the amount which the county tax collector of his county is authorized to pay on coupon No.1 to the said county Treasurer for the available school fund for the ensuing school year." Therefore, when the Board of Education has made the apportionment and the certificate has been issued notifying the county Treasurer of the sum apportioned to his county, and when, on the first day of each month, the State Treasurer has made a pro rata distribution of the funds that have come to his hands during the preceding month, and notified, through the Superintendent of Public Instruction, the county Treasurer of the amount set apart to his county, and the county Treasurer has presented to the Comptroller a coupon properly filled out and receipted by said local treasurer,—it becomes the plain duty of the Comptroller to draw his warrant for the sum so apportioned. It is an imperative obligation enjoined upon him by the law-making power of the State. In pursuance of the power conferred upon it by amended section 3 of article 5 of the Constitution, the Legislature has given this court jurisdiction to issue the writ of mandamus against any State officer, the Governor excepted. That is, it has authorized a suit against any such officer to compel him to perform the duties imposed upon him by law. It can hardly be said that such a suit is one against the State; but if it be such in any sense, it is nevertheless proper and maintainable, because the State has authorized it to be brought. It is otherwise when the Legislature has not enjoined the performance of the act, and the interests of the State, either in its property or funds, would be injuriously affected by awarding the writ. (See Thompson v. Baker, this day decided.)

3. The law imposes the duty upon the county Treasurer of procuring the warrant from the Comptroller and of collecting it from the State Treasurer. No other officer of the State or county has authority to do this. It is a matter that pertains alone to the school fund of the State, and in it the county, in its quasi-corporate capacity, has no interest that can be recognized by law. Its treasurer is the custodian of so much of the available school fund as may be set apart to the county; the County Superintendent, if there be one—and if not, the County Judge—superin

tends its distribution under the law.    It does not follow, that because an officer is called a county officer, that the functions he exercises are exercised for the quasi-corporation.    They may be State officers, though their jurisdiction or powers may be confined to the limits of the county or even to one of its political subdivisions.    Fears v. Nacogdoches Co., 71 Texas, 337.    The County Superintendent or County Judge as the case may be, and the County Treasurer, in the exercise of the powers conferred upon them by the school·law over the available school fund of the State, which is set apart for the maintenance of the public schools of the county, act for the State, and for such children residing within the geographical limits of the county, as the State has designated as the objects of its bounty. For the purpose of convenience in administering the available school fund of the State, the Constitution and statutes adopt the State's political subdivisions in providing for its distribution, and the statutes devolve certain duties with respect thereto upon certain of the county officers.    This was doubtless prompted in part by motives of economy.    It confers no right in the fund in the quasi-corporation known as the county.    The Constitution makes the Commissioners Court the governing body for the county business proper.    Constitution, article 5, sec. 18. These courts are empowered by the statutes to exercise some functions with reference to the execution of the school law, such, for example, as abolishing the office of county Superintendent; dividing the county into school districts; ordering elections to authorize a levy of special taxes to aid in the support of the public schools and to levy such taxes, when voted by·the people.    But the law does not make them either the custodians or disbursing agents of the fund set apart by the State to the counties; nor does it make the counties, as bodies politic, the trustees of such fund.    It follows, we think, that the County Treasurer, as the treasurer of the available school fund apportioned to the county, having the duty imposed upon him of procuring and collecting the warrant, was the proper party to bring the suit.    Travis County had no right to institute and maintain the proceeding.

There is a marked distinction between the available school fund apportioned to a county and the lands granted to the counties respectively for school purposes.    The titles to the latter and to the fund arising from the sale of such lands are vested by the Constitution in the respective counties.    Constitution, article 7, sec. 6.    For its own lands and school funds—the proceeds of such lands—each county has the right to sue.

The demurrer to. the petition must be overruled; and this brings us to the question of the sufficiency of respondent's answer.

The purpose of the answer is to show that the county of Travis is indebted to the State of Texas, so as to bring the case within the prohibition prescribed in article 2831 of the Revised Statutes.    That article contains the following provision:    "No warrant shall be issued in favor of any person, or agent or assignee of any person indebted to the State until such debt be paid."    This was probably intended not only to enforce the

State's off-set, but to compel the direct payment of a debt due the State, by depriving the debtor of the right to draw any money from the State Treasurer, until his obligation is wholly discharged. But the principle which pertains in case of off-sets must apply here. The "person" mentioned in the statute must be the State's debtor and the State's creditor in the same right. The petitioner does not claim the warrant as county Treasurer of Travis County; but the school law makes him, as county Treasurer, ex-officio "treasurer of the available public free school fund" of his county (Rev. Stats., art. 3935); and it is in this latter right that he sues. As treasurer of the school fund set apart to the county, he owes nothing to the State or to the general State school fund; neither does the fund he represents owe anything. We have already endeavored to show that, to the money for which the warrant in controversy is sought, Travis County in its corporate capacity is not entitled, either in its own right or as trustee for the public schools of the county. If it were money coming to Travis County, or if, by some inadvertence, the county Treasurer had received from the available school fund of the State more money than he was entitled to receive and had appropriated it to the use of the schools, and thus he, or the fund of which he is trustee, had become liable to reimburse the general State fund, the defense would have been more plausible. But, admitting, for the sake of the argument, that the answer shows an indebtedness on part of Travis County to the State school fund, the question is simply this: Can a fund provided and set apart by the State for the benefit of the children of Travis County, be off-set by the county's indebtedness? Can that indebtedness be interposed under article 3935 of the Revised Statutes, cited above, as a ground for refusing to issue the warrant in this case? We are clearly of opinion that these questions must be answered in the negative.

But even had the Legislature passed an act which attempted, in explicit terms, to authorize the Comptroller to withhold his warrant in a case like this, it would have been without effect. Section 5 of article 7 reads as follows: "The principal of all bonds and other funds, and the principal arising from the sale of the land hereinbefore set apart to said school fund, shall be the permanent school fund; and all interest derivable therefrom and the taxes herein authorized and levied shall be the available school fund, to which the Legislature may add not exceeding one per cent annually of the total value of the permanent school fund; such value to be ascertained by the Board of Education until otherwise provided by law; and the available school fund shall be applied annually to the support of the public free schools. And no law shall ever be enacted appropriating any part of the permanent or available school fund to any other purpose whatever; nor shall the same or any part thereof ever be appropriated to or used for the support of any sectarian school; and the available school fund herein provided shall be distributed to the several counties according to their scholastic population and applied in such manner as may be provided by law." The Legislature cannot do by indirec-

tion what it cannot do directly. To off-set the school fund set apart
to the county by the debt of the county, would be to devote the fund to
a purpose not intended by the Constitution; and to authorize the Comp-
troller to withhold his warrant until the county's debt was paid would
infringe the express provision of the section quoted, which declares that
the fund "shall be distributed to the several counties according to their
scholastic population and applied in such manner as may be provided by
law." It is evidently meant, that it must be distributed and applied for
the purpose for which the fund was created—namely, the support of the
public schools. It follows, that the allegations of the answer do not
show a defense to the suit, and that the demurrer thereto must be sus-
tained.

Whether the word "person" in article 2831 includes a county; and
whether the alleged indebtedness of Travis County is sufficiently pleaded
in respondent's answer, are questions which we do not find it necessary
to decide.

The writ of mandamus is awarded as prayed for in the petition.

*Writ of mandamus granted.*