

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

November 18, 1957

Honorable W. S. Heatly,
Chairman
State Affairs Committee
House of Representatives
Austin, Texas

Dear Mr. Heatly:

Opinion No. WW-323

Re: Constitutionality of House
Bill No. 1 and House Bill
No. 2 of the Second Called
Session, 55th Legislature,
1957.

You have requested the opinion of this office on the constitutionality of House Bill No. 1 and House Bill No. 2, now pending before the State Affairs Committee of the House.

We shall first consider the provisions of House Bill No. 1. Section 1 of the latter bill recites the purpose of the bill in the following terms:

"The purpose of this Act is to further provide for the maintenance of law, peace, and order in the operation of the public schools without resort to military occupation or control. The duties and powers vested in public officials and school boards under this Act shall be in addition to and cumulative of those with which they are vested under existing law for accomplishment of the purpose of this Act or any Section thereof."

Section 2 provides in substance that the Governor, through the Department of Public Safety, shall provide assistance when called upon by local authorities to maintain peace and order in the operation of public schools. Said section further provides that the Texas National Guard and other military forces shall not be used for the foregoing purposes. There is further provision that when a school board finds that violence, or the danger thereof, cannot be prevented except by resort to military force or occupation of a public school, the school board may close the school and suspend its operation for such period as the board finds it necessary to maintain order and the public peace in accordance with the terms of this Act.

Section 3 provides that in the event the National Guard or any other military troops or personnel are employed or used upon order of any Federal authority on public school property or in the vicinity of any public school for direction or control of the order, operation or attendance at such school, the school board having jurisdiction may close the school and suspend its operation so long as said troops remain on or within the vicinity of the school for any such purposes.

Section 4 provides that when a school is closed, pursuant to the provisions of Section 2 and 3, the salaries of school personnel shall not be affected and neither shall such closure affect state aid nor accreditation.

Section 5 provides that the school board shall use all resources of the district to provide out-of-classroom instruction for the pupils concerned and for the reopening of school at the earliest possible time that peace and order can be maintained without the use or occupation of military forces.

Section 6 authorizes the Attorney General to assist public school boards in the defense of certain suits in the Federal Courts and further authorizes the Governor to transfer funds to the Attorney General for such purposes.

The foregoing are the provisions of House Bill No.1, with which we are primarily concerned in passing upon the constitutionality of the bill.  There are other provisions which we have carefully considered but, in the interest of brevity, have not mentioned.

In 78 C.J.S. p. 624, it is stated:

"The power to establish and maintain systems of common schools, to raise money for that purpose by taxation, and to govern, control and regulate such schools when established is one of the powers not delegated to the United States by the federal constitution, or prohibited by it to the states, but is reserved to the states respectively or to the people, and the people through the legislature and the constitution have the right to control and prescribe the limits to which they will go in supplying education at public expense."

As early as 1845, provision was made in our State Constitution for the establishment and maintenance of a system of public free schools.  Our present constitutional provision is embodied in Section 1 of Article VII, which reads as follows:

"A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

The foregoing constitutional provision devolves the duty of establishing and maintaining public free schools upon the Legislature.  In defining the authority of the Legislature in the field of public education, the Supreme Court of Texas, in the case of Mumme v. Marrs, 40 S.W. 2d 31, said:

"Since the legislature has the mandatory duty to make suitable provision for the support and maintenance of an efficient system of public free schools, and has the power to pass any law relative thereto, not prohibited by the constitution, it necessarily follows that it has a choice in the selection of methods by which the objects of the organic law may be effectuated.  The Legislature alone is to judge what means are necessary and appropriate for a purpose which the constitution makes legitimate.  The legislative determination of the methods, restrictions, and regulations is final, except when so arbitrary as to be violative of the constitutional rights of the citizen."

The provisions of House Bill No. 1 are founded upon the premise that the presence of military troops in or about the public schools of the State is not conducive to the maintenance of an "efficient" system of public free schools.  The bill, accordingly, provides that when troops are employed or used upon or in the vicinity of public school property or when such conditions of violence and disorder exist in connection with the operation of a public school that violence or the danger thereof cannot be prevented, except by resort to military force, the school may be closed for so long as either of the foregoing conditions exist.  By its express terms, the bill operates exclusively against the evil sought to be avoided or corrected.  The authority granted thereby comes into existence with the evil and ceases to exist when the latter has been eliminated.  Its provisions apply alike to all of our schools and all of our citizens.

With the exceptions hereinafter noted, we think the bill contravenes no provision of either our state or federal constitution.  Its provisions are entirely consistent with the constitutional mandate directed to the Legislature for the support and maintenance of an _efficient_  system of public free schools.  It also constitutes a legitimate exercise of the police powers of the State.

The foregoing conclusion is based upon the assumption that the terms of the bill will be observed and enforced in the manner and only for the purposes as set forth therein.  An act constitutional on its face may become unconstitutional in the manner of its enforcement, but it is not within the province of this office to assume that an act will be enforced, or subverted to the accomplishment of unconstitutional purposes, contrary to its express terms.

A serious constitutional question is presented in connection with that portion of Section 2, which prohibits the use of the Texas National Guard or other military forces to prevent violence and maintain peace and order in the operation of public schools.  It is our view that this prohibition violates Section 7, Article IV of the Constitution of Texas, which, in speaking of the powers of the Governor, provides:

> "He shall be Commander-in-Chief of the military forces of the state, except when they are called into actual service of the United States. He shall have the power to call forth the militia to execute the laws of the state, to suppress insurrections, repel invasions, and protect the frontier from hostile incursions by Indians or other predatory bands."

As written, Section 2 would constitute an infringement upon the executive powers of the Governor.  We understand, however, from your supplemental letter, dated November 14th, that this section will be amended by the State Affairs Committee, pursuant to the request of both the Governor and the author of the bill, to provide that the "Texas National Guard and other military forces shall not be called or used for such purposes by the Governor, or any other official authorized by the laws of this state, except as a last resort".  It is our view that the proposed amendment would render said section constitutional.

Honorable W. S. Heatly, page 5. (WW-323)


This conclusion finds support in the case of <u>Neff et al v. Elgin</u>, 270 S. W. 873 (Writ of error ref.), which sustained the constitutionality of the Act creating the Texas Ranger Force. The Court said:

> "The Governor is empowered to call forth the militia to execute the laws of the state, to suppress insurrections, repel invasions, and protect the frontier from hostile incursions by Indians or other predatory bands; but it is not intimated that the laws shall be executed by the militia alone, but the plain inference is that the militia is to be used <u>in executing the laws as against organized violation of laws, and the commission of crime</u>. . . .

> ". . . The Constitution . . . nowhere limits the authority of the Legislature in providing means to enforce the laws. . . ."

It is entirely consistent with both our Constitution and our form of government that the use of the militia be limited to those circumstances where the civil arm of the State is inadequate to cope with the situation.

It has been suggested that Section 6, which authorizes the Attorney General to assist local school boards in the defense of certain law suits, and makes funds available for such purposes, is not germane to the general subject matter of the bill and hence constitutes a separate subject, contrary to Section 35 of Article III of the Constitution of Texas. We do not subscribe to this view. Incorporation in the body of an Act of the means by which its object may be accomplished does not render the Act obnoxious to the constitutional inhibition against bills containing more than one subject. Accordingly, an Act with one leading subject, which is expressed in its title, may contain appropriate provisions designed or tending to accomplish, effectuate or enforce the general object or purpose of the law. 39 Tex. Jur. 90 and the cases there cited. Although it is our view that Section 6 can be sustained as a part of House Bill No. 1, the Legislature might wish to incorporate the provision in a separate bill to remove any doubt relative thereto.

It is noted that the last sentence of Section 6, authorizes the Governor to transfer certain funds to the office of the Attorney General. This is a matter which is not included in the caption of the bill and should be so included.

It is also noted that the caption indicates that either the Governor or the local school board may close a school, but the body of the Act vests such authority solely in the school board. This is a discrepancy which you will doubtless wish to correct.

You are accordingly advised that it is the opinion of this office that House Bill No. 1, subject to the adoption of the proposed amendment to Section 2 thereof and other matters mentioned, is constitutional.

It is also our view that the same general principles which sustain the constitutionality of House Bill No. 1 are applicable to House Bill No. 2. Section 1 of the latter bill, however, provides in substance that when federal troops occupy a school, its grounds or yards, or adjacent property, either public or private, that the school shall close and remain closed so long as the troops remain. As written, the language is sufficiently broad to place school districts which are adjacent to, or inclusive of, military reservations in a doubtful status. The school would be compelled to close even though the presence of the federal troops be in no way connected with or related to the operation of the school.

Section 1 of House Bill No. 2 would require and Section 3 of House Bill No. 1 would only authorize a school board to close the schools when federal troops were used. If a board should determine that the presence of the troops rendered the school inefficient and ineffective to carry out its educational purpose, then in our opinion the board could close the schools and in doing so would not make Section 3 of House Bill No. 1, unconstitutional. However, if the troops did not impede the efficiency of the school nor render ineffectual its educational purpose, it could not close the schools simply to thwart the federal order. Because Section 1 of House Bill No. 2 would require the school to close irrespective of any effect the presence of federal troops might have upon the operation of the school, the bill is unconstitutional to this extent. The bill could, of course, be amended to remedy this defect.

Section 5 of House Bill No. 2 provides that no state funds shall be paid to any school district which fails to comply with the provisions of the Act. This provision cannot have any effect upon the distribution of the state available school fund. Section 5 of Article VII of the Constitution of Texas renders it mandatory that this fund be distributed annually to the several counties according to their scholastic population.

This constitutional provision may be satisfied only by the distribution and application of the funds and not by withholding them.  Attorney General's Opinion No. O-4052 (1942); Jurnigan v. Finley, 90 Tex. 205.

We would suggest that a section be added to clearly exempt the normal operation of the Reserve Officers Training Program, National Guard and Texas State Guard, from in any manner calling into effect the provisions of either bill and also exempting school districts operating on Federal Military Reservations or adjacent thereto.

## SUMMARY

House Bill No. 1 of the Second Called Session of the 55th Legislature, is constitutional subject to the matters noted.

House Bill No. 2 is unconstitutional for the reasons stated.

Very truly yours,

WILL WILSON
Attorney General of Texas

By  Leonard Passmore
Leonard Passmore
Assistant

LP:zt

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

Wayland Rivers, Jr.

John H. Minton, Jr.

Joe Carroll

Riley Eugene Fletcher

Grundy Williams

REVIEWED FOR THE ATTORNEY GENERAL
BY:  James N. Ludlum