

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

March 31, 1966

*overrules O-2412*

Honorable John Connally
Governor of Texas
State Capitol
Austin, Texas

> Attention: Mrs. Carter Clopton
> Executive Director
> Governor's Committee on Aging
>
> Opinion Co. C-644
>
> Re: Whether contracts between the Governor's
> Committee on Aging and certain enumerated
> entities can be legally entered into for
> the purposes stated.

Dear Governor Connally:

You have requested the opinion of this office as to
the subject question. In this connection, the following is
quoted from your letter:

> "Pursuant to Article 695k, Vernon's
> Civil Statutes, enacted by the 59th Legis-
> lature, this office has adopted and promul-
> gated the Texas State Plan for Implementing
> the Older Americans Act of 1965. In carry-
> ing out this Plan in accordance with both
> State and Federal purposes, it is anticipated
> that this office will enter into contracts
> with other State agencies, local political
> subdivisions, private individuals, corpora-
> tions and institutions, whereby these enti-
> ties will perform services in keeping with
> the requirements of Article 695k, and the
> Texas State Plan.
>
> "It is anticipated that some of the
> private agencies with which we contract
> will be either church-operated or connected
> with religious institutions. These contracts
> will cover a wide range of activities, and
> can include the conduct of training classes
> for field workers, the development of par-
> ticular programs to benefit the aging, and

many other activities in this specialized field.

"It has been suggested that this office may not legally obligate itself nor pay out State funds to a religious organization, such being in violation of the constitutional principle of separation of church and state. However, in the instant case we would point out that there will be no grants or gifts of any kind made to any private individual, corporation, agency or institution, but that contracts will be entered into and all payments will be made solely on the basis of services rendered to the State. We would very much appreciate the opinion of the Attorney General's Office as to whether contracts for the purposes set out above would be proper, and whether the contract amounts could properly be paid out of State funds."

At the outset we must observe that no difficulty is presented when the Governor's Committee on Aging, contracts with other State agencies, local political subdivisions, or private individuals, corporations and institutions that have no religious connection. Such contracts are within the authority granted by Article 695k, Vernon's Civil Statutes, and the State is in the position of making payment for value received.

The essential problem presented for our determination is the propriety of the Governor's Committee on Aging contracting with an institution or corporation governed by a religious sect or denomination.

Article I, Section 7, of the Texas Constitution, reads as follows:

"No money shall be appropriated, or drawn from the Treasury for the benefit of any sect, or religious society, theological or religious seminary; nor shall property belonging to the State be appropriated for any such purpose."

The Texas State Plan for Implementing the Older Americans Act of 1965 is drafted in such a way that the Federal funds made available are paid out through the State in the form of payments for services rendered under contract. The question thus becomes a matter of determining whether State payment for services rendered by an institution with a religious affiliation or connection constitutes money "drawn from the Treasury for

the benefit of any sect, or religious society, theological or religious seminary." There is no Texas case law upon this question, and there has been only one prior Attorney General's opinion issued that has directly met this issue.

Attorney General's Opinion 0-2412 (1940) was written in response to a question from the Director of the Vocational Rehabilitation Division of the State Department of Education. That agency was authorized to assist in the rehabilitation of disabled persons in many ways, one of which was to pay their tuition at a college or university. Several individuals had expressed a desire to attend a denominational school, such as Baylor, Southern Methodist or Texas Christian, and the Attorney General's office was asked whether the payment of these handicapped persons' tuition to such schools would constitute a benefit to these sectarian institutions in violation of Article I, Section 7, of the Texas Constitution. It was concluded, in Opinion 2412, that such payment of tuition would not be a direct benefit, but would be an indirect one that was forbidden by the Constitution. In support of this proposition, the opinion cited the case of Jernigan vs. Finley, 90 Tex. 205, 38 S.W. 24 (1896). This case dealt with the question of whether a county's indebtedness to the State authorized the Comptroller of Public Accounts to withhold payment of the county's pro rata share of the available school fund. The law expressed by the Supreme Court regarding this question has no bearing upon a question of what constitutes money paid for the benefit of a religious organization. 0-2412 was, in fact, based upon two cases from other jurisdictions: Synod of Dakota vs. State, 2 S.D. 366, 50 N.W. 632 (1891), and Williams vs. Stanton Graded Common School District, 173 Ky. 708, 191 S.W. 507 (1917). Both of these cases are well-written expressions of the law and philosophy of their era. The Synod case is still the law in South Dakota, but the Williams case has been superseded in Kentucky.

The Supreme Court of Kentucky issued a landmark opinion in Kentucky Building Commission vs. Effron, 310 Ky. 355, 220 S.W. 2d 836 (1949). Therein, pursuant to statute, the State proposed to pay tuition and certain other benefits to assist in the operation of a school of nursing operated by a Catholic hospital. Although we have the added feature of contract, the Kentucky situation was essentially like ours, in that their statute was enacted to enable the State to make use of Federal funds made available for social purposes. The essential reasoning of Effron is expressed in the following sentence, taken from page 837:

> "It is well settled that a private agency may be utilized as the pipe-line through which a public expenditure is made, the test being not who receives the money, but the character of the use for which it is expended." (Emphasis added)

Hon. John Connally, page 4 (C-644)


Then, from page 838:

> "Manifestly, the framers of our Constitu-
> tion did not intend to go so far as to prevent
> a public benefit, like a hospital in which the
> followers of all faiths and creeds are admitted,
> from receiving State aid merely because it was
> originally founded by a certain denomination
> whose members now serve on its board of trus-
> tees."

The Effron case, supra, was the basis for the holding in In re Opinion of the Justices, 113 A.2d 114 (Supreme Court, New Hampshire, 1955), wherein the Court discussed the conduit theory of Effron, and made the following observations:

> "The purpose of the grant proposed by
> House Bill 327 is neither to aid any parti-
> cular sect or denomination, nor all denomi-
> nations, but to further the teaching of the
> science of nursing. . . . the public funds
> will not be applied to sectarian uses. If
> some denomination incidentally derives a
> benefit through the release of other funds
> for other uses, this result is immaterial."

Since the issuance of the Effron decision, other jurisdictions have also cited the case with approval and have adopted its reasoning. See Craig vs. Mercy Hospital-Street Memorial, 209 Miss. 427, 45 So.2d 809 (1950); Legat vs. Adorno, 138 Conn. 134, 83 A.2d 185 (1951); Roe vs. Kervick, 42 N.J. 191, 199 A.2d 834 (1964). And it should be pointed out that Kentucky, New Hamp-shire, Mississippi, Connecticut and New Jersey all have constitutional provisions substantially identical to that of Texas as regards aid or support to religious institutions.

With a very detailed constitutional provision regarding aid to a religious institution, the Supreme Court of South Carolina decided, apparently with regret, that it could not apply the rationale of Effron to its constitutional problem. Parker vs. Bates, 216 So.Car. 52, 56 S.E.2d 723 (1949).

After a careful analysis of Attorney General's Opinion 0-2412 (1940), we are of the opinion that its base rested com-pletely on the persuasive, but not binding, law of other juris-dictions.

Based upon the authorities cited herein, it is the opin-ion of this office that Attorney General's Opinion 0-2412 (1940) should be, and it is hereby overruled. It is the further opinion

of this office that the rationale of Kentucky Building Commission vs. Effron, cited supra, is valid as a basis for interpreting Article I, Section 7, Texas Constitution.

You are therefore advised that it is the opinion of this office that the Governor's Committee on Aging may contract with religious institutions for the performance of services that are within the scope of authority granted by Article 695k, Vernon's Civil Statutes, and the Texas State Plan for Implementing the Older Americans Act of 1965. You are further advised that any such payment of State funds may only be made to any private entity pursuant to contract, and after performance of the service required by the said contract.

## SUMMARY

It is the opinion of this office that the Governor's Committee on Aging may contract with religious institutions for the performance of services that are within the scope of authority granted by Article 695k, Vernon's Civil Statutes, and the Texas State Plan for Implementing the Older Americans Act of 1965. Any such payment of State funds may only be made to any private entity pursuant to contract, and after performance of the service required by the said contract.

Yours very truly,

WAGGONER CARR
Attorney General.

By Malcolm L. Quick
Assistant

MLQ:ms

APPROVED:
OPINION COMMITTEE
W. V. Geppert, Chairman
Gordon Houser
Pat Bailey
Kerns Taylor
Roger Tyler

APPROVED FOR THE ATTORNEY GENERAL
By: T. B. Wright