

# THE ATTORNEY GENERAL
## OF TEXAS

May 23, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable Garry Mauro
Commissioner
General Land Office
Stephen F. Austin Building
1700 North Congress Avenue
Austin, Texas   78701

Opinion No.   JM-1049

Re: Whether real property belonging to the Permanent School Fund is exempt from property taxes when it is leased to a private business (RQ-1408)

Dear Mr. Mauro:

You ask five questions regarding the taxability of certain interests in real property comprising part of the permanent school fund, specifically, the interest retained by the state when it has leased land to private businesses. Your request is prompted by the following two fact situations. First, in September 1986, the state acquired title in fee simple absolute to two tracts of land in Tarrant County for the use and benefit of the permanent school fund. At the time that the state acquired title, you leased both tracts on behalf of the permanent school fund to a Texas corporation. A commercial strip shopping center is located on one tract; no improvements are located on the second tract. The permanent school fund owns only the real property; it owns none of the improvements located thereon. The Texas corporation to which you leased the first tract owns the improvements and, in turn, has subleased the tract to the occupants of the stores. In October of 1987, Tarrant County and an independent school district located in Tarrant County sent tax statements to the General Land Office, imposing ad valorem taxes on the real property but not on the improvements.

The second situation you ask about involves the taxability of coastal and upland lands that are dedicated by statute to the permanent school fund. Pursuant to chapter 33 of the Natural Resources Code, the School Land Board, of which you are a member, has the authority to grant easements for private use of coastal and upland public land and leases for use by public entities. It is your understanding

that local taxing units intend to impose ad valorem taxes against easement holders that engage in private businesses (such as oil and gas pipelines and commercial marina operations) based upon the property values of the permanent school fund property encumbered by the easements.

You contend that both the permanent school fund land leased to a private business enterprise, as well as any leasehold interest encumbering it, is exempt from property taxation. In other words, you contend that both the real property in the hands of the state and the leasehold interest in the hands of the private lessee are exempt from property taxation. In the alternative, you contend that, if the permanent school fund land that is leased to a private business enterprise is taxable, then only the leasehold estate is taxable to the private business enterprise; you contend that the real property itself is not taxable to the state.

You first ask:

> Does TEX. CONST. art. VIII, §2 and art. VII, §5, in conjunction with Tex. Tax Code Ann. §11.11(a) (Vernon 1982), exempt Permanent School Fund property from ad valorem property taxes even though leased to a private business enterprise?

We conclude that the state's interest in land that is part of the permanent school fund is exempt from ad valorem taxation, even if the state has leased the land to a private concern to be used for a private purpose.

Article VIII, section 1, of the Texas Constitution provides in relevant part: "All real property and tangible personal property in this State . . . shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Article VIII, section 2, provides in relevant part that "the legislature may, by general laws, exempt from taxation public property used for public purposes."[1]  Pursuant to article VIII, section 2, the

---

1. Article XI, section 9, of the Texas Constitution, by its terms, exempts "property of counties, cities and towns, owned and held only for public purposes, . . . and
(Footnote Continued)

legislature enacted section 11.11 of the Tax Code, governing the taxation of public property:

(a) Except as provided by Subsections (b) and (c) of this section, property owned by this state or a political subdivision of this state is exempt from taxation _if the property is used for public purposes._[2]

(b) Land owned by the Permanent University Fund is taxable for county purposes. Any notice required by Section 25.19 of this code [Notice of Appraised Value] shall be sent to the State Property Tax Board, and the board shall appear in behalf of the state in any protest or appeal relating to taxation of Permanent University Fund land.

(c) Agricultural land or grazing land owned by a county for the benefit of public schools under Article VII, section 6, of the Texas Constitution is taxable for all purposes. The county shall pay the taxes on the land from the revenue derived from the land. If revenue from the land is insufficient to pay the taxes, the county shall pay the balance from the county general fund.

(d) _Property owned by the state that is not used for public purposes is taxable. Property owned by a state agency or institution is not used for public purposes if the_

---

(Footnote Continued)
all other property devoted exclusively to the use and benefit of the public . . . from taxation . . . ." This section is self-executing. Because the last clause has never been construed to apply to property owned by the state, we need not discuss the cases involving counties and cities that rely upon this provision.

2. The Texas Supreme Court has construed the relevant language of article VIII, section 2, of the Texas Constitution to require _exclusive_ use by the political subdivision in order that it receive exempt status. _Leander Indep. School Dist. v. Cedar Park Water Supply Corp._, 479 S.W.2d 908 (Tex. 1972).

property is rented or leased for compensation
to a private business enterprise to be used
by it for a purpose not related to the
performance of the duties and functions of
the state agency or institution or used to
provide private residential housing for
compensation to members of the public other
than students and employees of the state
agency or institution owning the property,
unless the residential use is secondary to
its use by an educational institution
primarily for instructional purposes. Any
notice required by Section 25.19 of this code
shall be sent to the agency or institution
that owns the property, and it shall appear
in behalf of the state in any protest or
appeal related to taxation of the property.

(e) It is provided, however, that pro-
perty that is held or dedicated for the
support, maintenance, or benefit of an
institution of higher education as defined by
Section 61.003(7), Texas Education Code, but
is not rented or leased for compensation to a
private business enterprise to be used by it
for a purpose not related to the performance
of the duties and functions of the state or
is not rented or leased to provide private
residential housing to members of the public
other than students and employees of the
state is not taxable. (Emphasis added.)

By the terms of subsection (d), it might appear that the
state's interest in the Tarrant County lands you ask about
are taxable to the state, since both are leased for
compensation to a private business enterprise to be used by
it for a purpose not related to the performance of the
duties of the School Land Board. You contend, however, that
leasing such property for compensation that will inure to
the benefit of the permanent school fund is precisely the
public purpose for which the permanent school fund was
created and that, therefore, the state is exempt from ad
valorem taxation on such property. We agree with your
assertion. Before we discuss specifically the questions you
submit, we first will present some background information
regarding the taxation of the various constitutional school
funds in Texas.

Article VII of the Texas Constitution governs public education on both the public elementary and secondary school and university levels.[3] Sections 10 through 18 of article VII set forth the provisions regarding university level education; sections 1 through 8 of article VII set forth the provisions regarding public elementary and secondary school education. Article VII, section 11, creates a permanent university fund, comprising, *inter alia*, certain lands dedicated for such purposes, as well as the proceeds derived from the sale thereof; interest derived from the investment of the proceeds of the sale of such lands is usually referred to as the "available university fund." Article VII was amended in 1930 by the addition of section 16(a), which provides that all land mentioned in sections 11, 12, and 15 of article VII, then belonging to the University of Texas, shall be subject to taxation for county purposes to the same extent as lands privately owned.[4]   *See also* Tax Code, § 11.11(b).

Sections 2 and 6 of article VII create two distinct types of trust funds in what has been termed a dual system for public elementary and secondary education; section 2 dedicates state-owned land to a state "perpetual school

---

3. Additionally, article VII, section 9, of the Texas Constitution dedicates all lands then granted for the benefit of the "Lunatic, Blind, Deaf and Dumb, and Orphan Asylums" to create a permanent fund for their support, maintenance and improvement.

4. The "Interpretive Commentary" to article VII, section 16(a), declares the purpose behind the adoption of the 1930 amendment:

> Due to the policy of the Board of Regents withholding the university lands from sale in spite of Art. 7, § 12 of the constitution, some of the poorer counties contained large areas of untaxable land. In order to assist these counties this amendment was adopted in 1930.

*See also* 2 Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis, at 551-52 (1977).

fund,"[5] while section 6 grants certain lands to counties also for the benefit of the public schools. See 2 Braden, supra, at 530-31. Income derived from the state "permanent school fund" is designated by article VII, section 5, as the "available school fund." Section 6 creates what is, in effect, a system of permanent school funds for the various counties, with the income derived from permanent county school fund investments dedicated to each county's "available school fund." Article VII was amended in 1927 by the addition of section 6a (and, subsequently, in 1972 by the addition of 6b), which specifically makes taxable for all except state purposes those lands set aside for the county permanent school funds.[6] See Tax Code, § 11.11(c).

---

5. The terminology used to designate the fund is confusing: section 2 refers to it as the "perpetual school fund" and "perpetual public school fund;" section 4 refers to it as the "public free school fund;" and section 5 labels it the "permanent school fund." The Texas Supreme Court long ago opted for the appellation of section 4, stating that sections 2 and 5 provided that certain funds and property constituted a "public free school fund." Webb County v. Board of School Trustees, 65 S.W. 878 (Tex. 1901). The endowment has been enlarged from time to time by statute, which designates it the "permanent school fund." Educ. Code § 15.01. By your use of the phrase "Permanent School Fund land," we understand you to mean that real property dedicated by section 2 of article VII, whose components have been added to by amendment to section 15.01 of the Education Code.

6. The "Interpretive Commentary" to article VII, section 6a, sets forth the reason for the amendment:

Article 11, Section 9 of the Texas Constitution exempts from taxation 'property of counties, cities, and towns owned and held for public purposes.' In 1888, the Texas Supreme Court held that no tax could be levied on a lease-holder of school lands:

"County school lands, when leased to raise an available school fund, are as exclusively devoted to the use and benefit of the public as they would be if covered with school-
(Footnote Continued)

Therefore, land comprising the state permanent university fund is taxable for county purposes only. Land comprising the permanent school funds of the various counties is taxable for all, except state, purposes. You ask about the taxability of lands comprising neither the permanent university fund nor the various county permanent school funds, but rather those comprising the state permanent school fund. Neither the Texas Constitution nor the Tax Code specifically addresses the issue of the taxability of such lands. Nor has any Texas court case or attorney general opinion addressed the issue.

For two reasons we conclude that, under the provisions of section 11.11 of the Tax Code, those lands set aside by article VII, section 2, of the Texas Constitution for the benefit of the public free schools are exempt from ad valorem taxation, even in the event that they are leased for compensation to private business enterprises to be used for purposes not related to the performance of the duties and functions of the School Land Board. Moreover, even if section 11.11 of the Tax Code fairly could be construed as requiring the taxation of permanent school fund land, we construe article VII, section 5, of the Texas Constitution as forbidding it.

First, we do not construe section 11.11 of the Tax Code to require the taxation of permanent school fund land. By the very terms of subsection 11.11(a) of the Tax Code, subsections (b) and (c) of section 11.11, which require the taxation in certain instances of permanent university fund

---

(Footnote Continued)

> houses; and the constitution forbids the taxation of the means through which such lands may be made to yield a revenue, without sale, as fully as does it forbid the taxation of the lands. Forbidding the taxation of the lands, it forbids the taxation of an estate less than fee, whether imposed on the county or its lessee." (Daugherty v. Thompson, 71 T. 192, 9 S.W. 99)

> In order to permit such taxation, except for state purposes, Sec. 6a was added to the Constitution in 1927.

See also 2 Braden, supra, at 533-34.

land and land comprising the various county permanent school funds, serve as exceptions to the general principles set forth in subsections (a) and (d). The express mention or enumeration of one person, thing, consequence, or class is tantamount to an express exclusion of all others. State v. Mauritz-Wells Co., 175 S.W.2d 238 (Tex. 1943); Ex parte McIver, 586 S.W.2d 851 (Tex. Crim. App. 1979). We conclude that the express inclusion of subsections (b) and (c), which indicates the intention of the legislature to require the taxation of certain specified state-owned land as provided by the Texas Constitution, likewise indicates the intention of the legislature not to require the taxation of permanent school fund land.

Second, we agree with your assertion that the sale or lease of land dedicated by article VII, section 2, of the Texas Constitution, with the proceeds from such sale or lease becoming part of the permanent school fund, is the precise public purpose for which such land was dedicated in the first instance. Even a cursory reading of the relevant provisions of article VII of the constitution makes it clear that the legislature that proposed those sections and the voters who adopted them did not intend, not that the land itself would be used for educational purposes, but rather that the income derived from its sale or lease would be so used. The establishment of such a fund in the Texas Constitution impresses upon the fund the nature of a public purpose. Absent specific constitutional language requiring taxation, the state's interest in such dedicated lands is tax exempt.

Subsections (a) and (d) of section 11.11 of the code, taken together, provide the following: (1) that all property owned by the state or a political subdivision is exempt from taxation if the property is used for a public purpose; (2) that property so owned that is not used for a public purpose is taxable; and, (3) that property so owned that is rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the political subdivision, except under certain specified exceptions, is not used for a public purpose and therefore is taxable.

If the legislature had intended that land owned by either the permanent university fund, the various county permanent school funds, or the permanent school fund fall within the ambit of (3) above (or, more specifically, subsection (d) of section 11.11), it would have been

Honorable Garry Mauro - Page 9 (JM-1049)

unnecessary to include subsections (b) and (c) in section 11.11, making land owned by the permanent university fund and by the various county permanent school funds taxable. The very terms of subsection (d) ordinarily would require the taxation of such dedicated lands. If the legislature had assumed that such dedicated lands would be taxable, subsections (b) and (c) would be mere surplusage and the earlier amendments adding section 6a and 16(a) to article VII would have been unnecessary. The legislature is never presumed to do a useless act. Hunter v. Fort Worth Capital Corp., 620 S.W.2d 547 (Tex. 1981); State v. City of Dallas, 319 S.W.2d 767 (Tex. Civ. App. - Austin 1958), aff'd, State v. City of Austin, 331 S.W.2d 737 (Tex. 1960). Had the legislature intended that permanent school fund lands be taxable, it is reasonable to assume that it would have so provided.

Finally, when construing section 11.11 of the Tax Code, we must presume that the legislature intended compliance with the Texas Constitution. Gov't Code, § 311.021(1). The legislature could not have intended that section 11.11 of the Tax Code be construed to require the state's interest in permanent school fund land that is leased to a private business enterprise be taxed, because to do so would violate subsection (a) of section 5 of article VII. That subsection provides in relevant part: "Except as provided by this section, no law shall ever be enacted appropriating any part of the permanent or available school fund to any other purpose whatever . . . ." This subsection has been construed to prevent the use of any proceeds for any purpose not specifically authorized. See, e.g., Greene v. Robison, 8 S.W.2d 655 (Tex. 1928) and companion cases; Jernigan v. Finley, 38 S.W. 24 (Tex. 1896); Attorney General Opinions H-881, H-878 (1976); V-147 (1947). We have found no authorization permitting proceeds to be expended for ad valorem taxation, either in the Texas Constitution or in the Tax, Education, or Natural Resources Codes.

We deem it significant that those constitutional provisions that govern both the permanent university fund and the various county permanent school funds do not contain restrictive language comparable to that found in section 5 governing the permanent school fund. Moreover, we deem it significant that sections 6a, 6b and 16(a) of article VII had to be added before permanent university land and the lands comprising the various county permanent school funds were taxed.

p. 5450

Honorable Garry Mauro - Page 10   (JM-1049)

Accordingly, we answer your first question in the affirmative; the state's interest in lands owned by the permanent school fund that are rented or leased to private business enterprises is exempt from ad valorem taxation.

You next ask:

> If any of the tracts mentioned above are not fully exempt, are the leasehold estates taxed according to Tex. Tax Code Ann. §23.13 and if so, to what extent, if any, is the Permanent School Fund liable for any taxes that may be assessed?

Section 25.07 of the Tax Code requires that certain leasehold and other possessory interests in exempt property be listed in the appraisal rolls in the name of the owner of the possessory interest. Section 25.07 of the Tax Code provides in part:

> (a)  Except as provided by Subsection (b) of this section, a leasehold or other possessory interest in property that is exempt from taxation to the owner of the estate or interest encumbered by the possessory interest shall be listed in the name of the owner of the possessory interest if the duration of the interest may be at least one year.

> (b)  Except as provided by Subsections (b) and (c) of Section 11.11 of this code, a leasehold or other possessory interest in exempt property may not be listed if:

>> (1)  the property is permanent university fund land;

>> (2)  the property is county public school fund agricultural land.

Section 23.13 of the Tax Code governs the appraisal of such taxable leaseholds and provides:

> A taxable leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate or interest encumbered by the possessory interest is appraised at the market value of

> the leasehold or other possessory interest.
> However, the appraised value may not be less
> than the total rental paid for the interest
> for the current tax year.

Sections 25.07 and 23.13 of the code and their predecessor statutes have been construed to provide for the taxation of a leasehold interest in real property, even in an instance in which the real property is exempt from taxation to the owner. See, e.g., Martin v. City of Mesquite, 590 S.W.2d 793 (Tex. Civ. App. - Dallas 1979, writ ref'd n.r.e.); Irving Indep. School Dist. v. Delta Airlines, Inc., 534 S.W.2d 365 (Tex. Civ. App. - Texarkana 1976, writ ref'd n.r.e.) (predecessor statute to section 23.13 of the Tax Code specifically held to be constitutional); Attorney General Opinions WW-281, WW-270 (1957); O-4661 (1942). We conclude that, by the clear terms of sections 11.11, 25.07 and 23.13 of the Tax Code, the leasehold interests in land comprising part of the permanent school fund are taxable to the owners of those interests. The permanent school fund itself is not liable for such taxes.

We have already concluded that permanent school fund land is not taxable to the state; we know of no reason why section 23.13 of the Tax Code does not require the taxation of the leasehold estate. Id.[7]  In such an instance, the permanent school fund would not be liable in the event that the owner of the leasehold estate fails to tender properly any taxes imposed.

You next ask:

---

7.  You rely principally upon Daugherty v. Thompson, 9 S.W. 99 (Tex. 1888) and two cases which rely upon Daugherty, Davis v. Burnett, 13 S.W. 613 (Tex. 1890), and Montgomery v. Peach River Lumber Co., 117 S.W. 1061 (Tex. Civ. App. 1909), in support of the proposition that a leasehold interest in exempt land is also exempt. In a case discussing the history of the predecessor statutes to section 23.13 of the Tax Code, the Supreme Court of Texas declared, inter alia, that Daugherty is no longer controlling on the issue. Phillips Chemical Co. v. Dumas Indep. School Dist., 316 S.W.2d 382 (Tex. 1958), rev'd on other grounds, 361 U.S. 376 (1959).

Honorable Garry Mauro - Page 12  (JM-1049)

If a leasehold estate is subject to taxation, and the lease is terminated or forfeited for failure to comply with the lease agreement, what party remains liable for the payment of taxes? If the tract of land is subsequently leased to another entity, does the tax liability continue to encumber the property or does it remain a personal liability of the previous lessee?

The person owning the possessory interest when the assessment is imposed is the person who remains liable for any unpaid taxes. Section 32.01 of the Tax Code governs the creation of tax liens and provides:

On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.

Section 32.07 of the Tax Code governs in an instance in which the person who owned a taxable interest in property when the tax liability was imposed no longer owns such an interest:

(a) Except as provided by Subsection (b) of this section, property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed. A person is not relieved of the obligation because he no longer owns the property. (Emphasis added.)

Section 32.07 of the code and its predecessor statutes have been construed to preclude the imposition on a purchaser of land that was subject to a lien for taxes and penalties of personal liability for those taxes and penalties. City of San Antonio v. Toepperwein, 133 S.W. 416 (Tex. 1911); Attorney General Opinions V-441 (1947); O-6293 (1944); O-5062 (1943). By the clear terms of section 32.07 of the Tax Code, the person in whose name the possessory interest is listed remains personally liable for any unpaid taxes, penalty, and interest. We note, however, that the taxable interest in the property is itself subject to sale

for the satisfaction of unpaid taxes validly assessed against it, whoever might have been its owner when the taxes originally accrued.   Tax Code § 32.01;  Attorney General Opinions MW-523 (1982); H-1108 (1977).

You next ask:

> If leasehold estates are subject to  taxation by the authority of Tex.  Tax Code Ann. §11.11(d) and §25.07(a),  are  easements granted by the School Land Board also taxable to the holder of  the easement?  If so,  what is the value of the taxable interest?  Is the value equal to the consideration paid for the easement or the value of the property  encumbered or some other measure?

Section 33.103 of the Natural Resources Code  specifies those interests  that  may be  granted  by the  School  Land Board:

> The  board   may   grant   the   following interests in  coastal  public  land  for  the indicated purposes:
>
> (1)  leases for public purposes;
>
> (2)  easements  for  purposes  connected with:
>
>> (A)  ownership of littoral  property; or
>>
>> (B)  the  operation  of  a  facility operated by an  existing channel and  dock corporation that  was  issued  articles  of incorporation under  Chapters 13  and  14, Title 32, Revised Statutes;
>
> (3)  permits authorizing limited continued use of previously unauthorized structures  on coastal  public  land   not  connected  with ownership of littoral property; and
>
> (4)  channel easements  to the  holder  of any surface or  mineral interests in  coastal public  land   for  purposes  necessary   or appropriate to the use of the interests.

Section 33.111 of the Natural Resources Code governs the granting of easements by the board and provides:

> (a)  The board may grant easement rights to the owner of adjacent littoral property authorizing the placement or location of a structure on coastal public land for purposes connected with the ownership of littoral property.

> (b)  The board may grant easement rights to construct channels, wharves, docks, and marinas to an existing corporation that was issued articles of incorporation under Chapters 13 and 14, Title 32, Revised Statutes.

> (c)  Notwithstanding any provision in its charter or articles of incorporation to the contrary, a corporation described in Subsection (b) of this section may only obtain the use of or acquire property from the state as provided by that subsection.

We understand you to ask about the taxability of these easements granted by the board.

As we stated in answer to your third question, sections 23.13 and 25.07 of the Tax Code impose tax liability on "leaseholds and other possessory interests in property that is exempt to the owner of the estate or interest encumbered by the possessory interest." In Attorney General Opinion JM-59 (1983), we construed section 23.13 of the Tax Code to require a two-step procedure: first, there had to be a determination that the real property in question was exempt in the hands of the owner; second, there had to be a determination that the rights conferred by the owner of the fee constitute a "possessory interest in property." We have already concluded that the real property comprising the permanent school fund is exempt in the hands of the state. We held in Attorney General Opinion JM-59 that concession rights in a state park for the construction and operation of a golf course granted by the Department of Parks and Wildlife was a sufficient "possessory interest" for purposes of section 25.07 of the Tax Code. The issue is whether an easement granted by the board likewise constitutes such a "possessory interest."

Section 1.04(16) of the Tax Code defines "possessory interest" in the following way:

> 'Possessory interest' means an interest that exists as a result of possession or exclusive use of a right to possession or exclusive use of a property and that is unaccompanied by ownership of a fee simple or life estate in the property. However, 'possessory interest' does not include an interest, whether of limited or indeterminate duration, that involves a right to exhaust a portion of real property.

Generally, an "easement" is a right one person has to use the land of another for a specific purpose. Magnolia Petroleum Co. v. Caswell, 1 S.W.2d 597 (Tex. Comm'n App. 1928, judgm't adopted); Miller v. Babb, 263 S.W. 253 (Tex. Comm'n App. 1924, judgm't adopted). Section 33.111 of the Natural Resources Code specifies the purpose for which the board can grant easements, i.e., "the placement or location of a structure on coastal public land for purposes connected with the ownership of littoral property." By the clear terms of section 33.111 of the Natural Resources Code, the interest or easement granted is clearly a "possessory interest" for purposes of the Tax Code. Therefore, we conclude that an easement granted by the board pursuant to section 33.103 of the Natural Resources Code falls within the ambit of sections 25.07 and 23.13 of the Tax Code and is taxable. Any such easement granted must be appraised pursuant to section 25.07 of the Tax Code.

Finally, you ask:

> If any interest held by the Permanent School Fund is not exempt from ad valorem taxation, and if the Permanent School Fund has cause to question the notice given by the taxing authority, the listing of the property in the name of the Permanent School Fund, or the valuation of the subject property, what is the appropriate procedure for the Permanent School Fund to protest such notice, listing, or valuation and to what extent would the Attorney General be required to represent the Permanent School Fund in such protest?

In view of our answers to your previous questions, we need not answer your last question.

## S U M M A R Y

The state's interest in real property comprising the permanent school fund is exempt from ad valorem taxation, even in the event that the property is leased to a private business enterprise. The leasehold estates in land comprising the permanent school fund are taxable to the lessees. If such a leasehold is terminated and taxes remain unpaid in the leasehold estate, the tax liability becomes a personal liability of the lessee who possessed the leasehold estate when the tax was imposed and the lien against the leasehold estate remains in force. Easements granted by the School Land Board in coastal and upland public lands that are dedicated to the permanent school fund are taxable pursuant to sections 11.11 and 23.13 of the Tax Code; such easements must be appraised pursuant to the provisions of section 25.07 of the Tax Code.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General